Douglas J. Serdahely, Esq. (Alaska Bar No. 7210072)
dserdahely@pattonboggs.com
PATTON BOGGS LLP
601 W. Fifth Avenue, Suite 700
Anchorage, Alaska 99501
Telephone: (907) 263-6310
Fax: (907) 263-6345

*Attorneys for Plaintiff Crowley Marine Services, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| CROWLEY MARINE SERVICES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> ALASKA VILLAGE ELECTRIC COOPERATIVE, INC. <br><br> Defendant. | Case No. 3:06-cv-00054-TMB <br><br> **MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** |

Plaintiff Crowley Marine Services, Inc. ("Crowley") has moved for Partial Judgment on the Pleadings on the limited question of whether the writings set forth in Crowley's complaint formed an enforceable contract. Because the facts as pled demonstrate that the writings could not, as a matter of law, have formed a contract, Crowley's motion should be granted.

**INTRODUCTION**

This case concerns a commercial dispute over the applicability of a cap on prices for fuel deliveries between Crowley, a shipper and supplier of fuel to regions including western Alaska, and the Alaska Village Electric Cooperative, Inc. ("AVEC"), a purchaser of fuel on behalf of various electrical utilities and other entities in that region. At issue are the nature, duration, and price terms of the parties' ongoing commercial relationship since 2004.

48381v6

This motion raises a discrete but fundamental issue in the case: whether a bid solicitation process for purchase of fuel initiated by AVEC on November 13, 2003 resulted in a written contract. *See* [Complaint ¶¶ 39 – 55, Exhibit 1]. Crowley responded to that bid solicitation on December 1, 2003 with an offer that, by its express terms, expired in part on December 4, 2003 and in its entirety on January 15, 2004. *See* [Complaint ¶¶ 43 - 48, Exhibit 2; Answer ¶¶ 43 - 48]. On February 20, 2004, AVEC, nevertheless, sent a letter purporting to award Crowley four fuel areas. [Complaint ¶ 49, Exhibit 3; Answer ¶ 49].

The nature and authenticity of these documents is not in dispute. At issue is their legal effect. Specifically, this motion and Crowley's Count 1 for Declaratory Judgment seek a ruling from this Court that, as a matter of law, AVEC's February 20 Letter was not an acceptance of Crowley's December 1, 2003 Offer because (1) it was an untimely response to an expired offer and (2) by its terms it was not an acceptance. [Complaint ¶¶ 50 – 55]. This legal conclusion is disputed. [Answer ¶¶ 50 – 55]. The significance of the issue is whether Crowley can be held to price terms stated only in its December 1, 2003 offer.

This is a diversity case, and Alaska law applies. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("federal courts sitting in diversity apply state substantive law"); *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). In particular, *Valdez Fisheries Development Association, Inc. v. Alyeska Pipeline Service Company*, 45 P.3d 657 (Alaska 2002), directly controls the present matter. In that case, the Alaska Supreme Court addressed and resolved a strikingly similar dispute in a motion for judgment on the pleadings. The Supreme Court concluded that, as a matter of law, an analogous bid award letter was not an acceptance of a contract. *Id.* at 666-667. The Court applied the longstanding principle that the terms of a

48381v6

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
*Crowley Marine Services, Inc. v. Alaska Village Electric Cooperative, Inc.*
CASE NO. 3:06-cv-00054-TMB
PAGE 2

purported contract present an issue of law for the Court to resolve. The Court further concluded that discovery was unnecessary, in part because the party claiming the existence of a contract in that case would necessarily have had knowledge of any acceptance. *Id.* at 667. Pursuant to the direct authority of the Alaska Supreme Court in *Valdez Fisheries*, this Court can and should address the legal effect of the analogous documents in this case as a matter of law and on the face of the pleadings.

Resolution of this motion will significantly narrow and simplify the issues in this case. If no written contract was formed by these documents, as Crowley believes to be the case, then it may prove unnecessary to consider claims otherwise presented such as misrepresentation, estoppel or related contentions. It will be equally clear that any contention by AVEC that a contract was formed on the terms of its initial bid solicitation must be established by separate proof, if such exists, of a distinct meeting of the minds. More importantly, Crowley believes that such a ruling will greatly simplify resolution of this dispute, either by this Court or by the parties themselves, on a commercially reasonable basis.[1]

## BACKGROUND

The background to this motion is found in the Complaint and Answer, and documents attached thereto. There is no dispute as to the authenticity of the documents or the dates on

---

[1] If there is no controlling written agreement, as this motion contends, then this dispute would likely be subject to resolution under the terms of the Uniform Commercial Code, enacted in Alaska as AS 45.01.101 et seq. The Code addresses sales of goods, *id.* at AS 45.02.201 et seq., although "the common law of offer and acceptance remains in force… except as displaced." White & Summers, Uniform Commercial Code, §1-5, p. 34 (1995); *see also* AS 45.01.103; *Armco Steel Corp. v. Isaacson Structural Steel Co.*, 611 P.2d 507, 516-17 (Alaska 1980). The Code carries a statute of frauds in addition to the broader one applicable to all contracts, AS 45.01.201, and requires implication of reasonable terms where the parties to a commercial sale of goods have failed to agree in writing or to complete terms. *See, e.g.,* AS 45.02.305 (price term is the "reasonable price" if left open).

48381v6

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
*Crowley Marine Services, Inc. v. Alaska Village Electric Cooperative, Inc.*
CASE NO. 3:06-cv-00054-TMB
PAGE 3

which they were sent, nor is there dispute as to the background allegations set out below. Thus, this undisputed background poses no issues of fact.

Crowley sells and delivers bulk heating fuel, diesel fuel, gasoline, jet fuel, and other petroleum products throughout Alaska, primarily by marine transport. [Complaint ¶ 6; Answer ¶ 6]. AVEC is a non-profit corporation that provides electricity in rural Alaskan communities. [Complaint ¶ 7; Answer ¶ 7]. Most of these communities are inaccessible by road. [Complaint ¶ 7; Answer ¶ 7].

On November 13, 2003, AVEC issued an Invitation to Bid ("ITB"). [Complaint ¶ 8; Answer ¶ 8; *see* Complaint, Exhibit A ("ITB")]. The ITB set out specific estimated fuel quantity requirements for AVEC and other entities in six geographic areas. [Complaint ¶ 9; Answer ¶ 9; *see* ITB at 13, 15-27]. AVEC's intent was to obtain a fuel supply contract for each area to supply all of the fuel requirements from a single vendor. [*See* ITB at 4]. According to the ITB, bids were due by and would be opened on December 1, 2003. [Complaint ¶¶ 10-11; Answer ¶¶ 10-11; *see* ITB at 1]. The ITB stated that the bids would be evaluated and formal notice of an award would be completed by December 11, 2003 unless special circumstances required a delay. [Complaint ¶ 12; Answer ¶ 12; *see* ITB at 1]. Notwithstanding this constraint, bids were to remain open for 45 days. [Complaint ¶¶ 13, 42; Answer ¶¶ 13, 42; *see* ITB at 5]. Bidders were permitted to explicitly shorten this time, but only at the risk of being declared non-responsive. [*See* ITB at 5].

Crowley timely responded to the bid solicitation by delivering a bid to AVEC on December 1, 2003. [Complaint ¶¶ 14, 43; Answer ¶¶ 14, 43; *see* Complaint, Exhibit B ("Crowley's Offer")]. Crowley's Offer contained two different sets of price terms for some

48381v6

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
*Crowley Marine Services, Inc. v. Alaska Village Electric Cooperative, Inc.*
CASE NO. 3:06-cv-00054-TMB
PAGE 4

areas; in particular, Crowley's Offer contained an offer to supply fuel requirements for one year at fixed prices ("Fixed Price Offer") in all areas, and also included an offer to supply fuel requirements at prices pegged to a reported market price ("Indexed Price Offer"). [Complaint ¶¶ 15, 43; Answer ¶¶ 15, 43; s*ee* Crowley's Offer at 1; *compare* Crowley's Offer at 14-26 *with* Crowley's Offer at 27-39]. Crowley's Offer stated that the Fixed Price Offer would remain open until December 4, 2003. [Complaint ¶¶ 17, 45; Answer ¶¶ 17, 45; *see* Crowley's Offer at 1]. The Indexed Price Offer would remain open until 45 days after December 1, 2003; it would expire on January 15, 2003. [Complaint ¶¶ 16, 43; Answer ¶¶ 16, 43; *see* Crowley's Offer at 1].

AVEC issued a "Notice of Award" on February 20, 2004. [Complaint ¶ 19; Answer ¶ 19; *see* Complaint, Exhibit C ("February 20 letter")]. The February 20 letter purported to award some area volumes to Crowley. [Complaint ¶¶ 20, 49; Answer ¶¶ 20, 49; *see* February 20 letter (stating that "Area contract awards are made as follows:" and listing "Crowley Marine Services" beside "Area 2," "Area 4," "Area 5," and "Area 6."]. Below this, the February 20 letter stated:

> To complete this award process, a review of expectations, concerns, and any condition that may affect delivery schedules or the pricing structure will be finalized in writing over the next few weeks, and completed no later than March 12th.

[Complaint ¶ 21; Answer ¶ 21; *see* February 20 letter].

The parties dispute whether the February 20 letter operated as an acceptance to Crowley's Offer, thereby creating a contract on these documents. [*Compare* Complaint ¶¶ 50-55 *with* Answer ¶¶ 50-55].

### JUDGMENT ON THE PLEADINGS STANDARD

Judgment may be entered on the pleadings alone and without reference to any extra documents or facts at any time prior to trial. *See* Fed. R. Civ. P. 12(c). The court may look to

48381v6

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
*Crowley Marine Services, Inc. v. Alaska Village Electric Cooperative, Inc.*
CASE NO. 3:06-cv-00054-TMB
PAGE 5

the allegations in the pleadings, together with any documents attached to the pleadings.  *See Amfac Mtg. Corp. v. Arizona Mall of Tempe*, 583 F.2d 426, 429-430 (9th Cir.1978) (holding that court may consider documents attached to the pleadings in 12(b) context); *Hal Roach Studios v. Richard Feiner and Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir.1990) (applying *Amfac* in 12(c) context).  *See generally Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir.2005) (discussing when it is appropriate to consider material outside the four corners of the pleadings).  Judgment should be entered for the moving party if, taking all of the allegations in the pleadings as true and construing them in favor of the non-moving party, the moving party is entitled to judgment as a matter of law.  *Living Designs v. E.I. Dupont De Nemours*, 431 F.3d 353, 359 (9th Cir. 2005).  Under Alaska law, contract interpretation normally presents a question of law for the Court.  *Jarvis v. Ensminger*, S-11581 (Alaska May 5, 2006); *Harris v. Ahtna*, 107 P.3d 271, 274 (Alaska 2005); *Valdez Fisheries Dev. Assoc. v. Alyeska Pipeline Svc. Co.*, 45 P.3d 657, 665 n.13 (Alaska 2002).

## ARGUMENT

Under well-settled, black-letter principles of law, AVEC's February 20 letter could not have been effective as an acceptance of Crowley's bid proposal because it was untimely and equivocal.[2]  The Alaska State Supreme Court has been clear that where a contract has not been

---

[2] To the degree this case may be governed by Alaska's Uniform Commercial Code, that will not alter the result.  The Code makes clear that "unless displaced by the particular provisions of the Code, the principles of law and equity … supplement the provisions of the Code."
AS 45.01.103.  Where specific provisions of the Code are applicable, they should be applied.  *See Prince v. LeVan*, 486 P.2d 959, 962.  However, when no specific provision of the Code is on point, then the other law controls.  *See*, *e.g.*, *Armco Steel Corp. v. Isaacson Structural Steel Co.*, 611 P.2d 507 (Alaska 1980) (applying common law definition of "offer" because the Code does not define this term).  The Code does not alter the relevant principles of offer and acceptance, namely that an acceptance must be both timely and unequivocal.

48381v6

formed and cannot be proved by the party asserting its existence, here AVEC, judgment as a matter of law is appropriate to avoid burdensome discovery exercises. Thus, Crowley is entitled to partial judgment on the pleadings on the limited question of whether a contract was formed by the documents pled unless AVEC can overcome the burden of establishing that its February 20 letter was a legally effective acceptance creating a contract on the terms of the ITB.

I.   **BECAUSE AVEC'S LETTER OF FEBRUARY 20, 2004 WAS AN UNTIMELY RESPONSE TO AN EXPIRED OFFER, IT COULD NOT HAVE OPERATED AS A VALID ACCEPTANCE OF THAT OFFER.**

AVEC's February 20, 2004, came long after the express expiration of Crowley's December 1, 2003 offer. As a matter of law, the letter could not have been valid or effective as an acceptance of Crowley's offer.

By its express terms, Crowley's December 1, 2003 offer in response to AVEC's November 13, 2003 invitation to bid remained in part "valid until close of business December 4, 2003" and otherwise "valid until close of business January 15, 2004." [Complaint, Exhibit B at 1, ¶¶ 4.B. and 4.A]. Thus, by its express terms, Crowley's offer expired at the latest more than a month before AVEC's February 20, 2004 letter.

In *Gumaer v. Interior Credit Bureau*, 627 P.2d 647 (Alaska 1981), the Alaska Supreme Court held that an offer could not be accepted after it expired:

> Under the law of contract formation deadlines for acceptance of offers are followed literally. If the deadline expires before an offer is accepted no contract is made. 1 A. Corbin, Contract § 35 (1963); 1 Williston on Contracts, § 53 (3d ed. 1957). The offeror is under no duty to make an offer. If he makes one, he is entitled to rely on the time expressed for termination of the power to accept it.

48381v6

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
*Crowley Marine Services, Inc. v. Alaska Village Electric Cooperative, Inc.*
CASE NO. 3:06-cv-00054-TMB
PAGE 7

*Id.* at 648. Even when the putative acceptance is just one day late, it cannot operate to create a contract. *Id.* ("Interior's notice of acceptance of February 6th came one day too late; the offer had been automatically withdrawn at the end of the previous day.").

As described by the Court in *McKibben v. Mohawk Oil Co., Ltd.*, 667 P.2d 1223 (Alaska 1983), this is because "at the time an offeror makes his offer, he has full control of its terms, and may specify the time within which the acceptance is limited accordingly." *Id*. at 1227 (*citing* 1 Corbin, *Corbin on Contract*, § 35 at 142 (1963) and *Beirne v. Alaska State Housing Authority*, 454 P.2d 262, 264-65 (Alaska 1969)). In *McKibben*, a letter from plaintiff's counsel was characterized by the defendant as an offer for accord and satisfaction of a dispute, and was claimed to have been timely accepted. The letter stated in relevant part: "In order to reach an understanding short of litigation, please contact this office within twenty days of the date of this letter." The purported acceptance, however, was sent twenty-two days after the date of the letter. Reversing the superior court, the Alaska Supreme Court found that defendants did not accept the offer in a timely fashion. *Id.* "Since the defendant's acceptance was untimely, the Superior Court improperly found that the correspondence between [counsel] resulted in an accord and satisfaction."

Here, as in *McKibben* and *Gumaer*, the offer deadline had expired prior to the offeree's purported acceptance. Crowley's bid proposal was delivered on December 1, and stated that it would be open only for the 45 days until January 15. [Complaint, Exhibit B at 1]. Thus, if the February 20 letter is taken to be a putative acceptance then in this case the offer had not expired a mere one or two days prior to acceptance, but 37 days before any communication even purporting to accept it. No contract can be found on these documents because Crowley was

48381v6

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
*Crowley Marine Services, Inc. v. Alaska Village Electric Cooperative, Inc.*
CASE NO. 3:06-cv-00054-TMB
PAGE 8

entitled to rely upon "the time expressed for termination of the power to accept" and "no contract is made" by a purported acceptance that is over a month late in arriving.

Also as in *McKibben*, even if it were alleged that a "reasonable time" for acceptance should have been afforded, the bid proposal's offer deadline would be dispositive evidence of what was meant by "reasonable." Indeed, AVEC's bid solicitation of November 13, 2003 by its own terms expressly stated that any offer received would only be considered valid for forty-five days:

> For purpose of award, offers made in accordance with this Invitation to Bid shall be good and firm for a period of forty-five (45) days from the date of bid opening, unless the bidder specifically limits their offer to a shorter period of time by written notification on the bid documents. However, bids so modified may be declared non-responsive.

[Complaint, Exhibit A at 5, ¶ 4]. Thus, AVEC's own statements would have set the offer deadline to January 15 at the latest.[3]

In short, because it was not timely received AVEC's February 20 letter could not possibly operate as an acceptance of Crowley's December 1 bid response. Crowley is entitled to judgment as a matter of law that these documents do not create a binding contract on the terms of the bid solicitation or bid proposal.

---

[3] AVEC's bid solicitation of November 13, 2003 also stated, "bid evaluation and formal notice of award will be completed within 10 working days after bid opening, unless a longer period is established due to special consideration such as selective rebidding." [Complaint, Exhibit A at 1]. Thus, a response to a bid such as Crowley's received on December 1, 2003 was actually contemplated by AVEC prior to December 10, 2003. This might provide evidence that a "reasonable time" to accept Crowley's bid proposal would have expired on December 10, not January 15. Whether the offer closed on December 10 or January 15, however, it was certainly closed prior to the February 20 letter.

48381v6

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
*Crowley Marine Services, Inc. v. Alaska Village Electric Cooperative, Inc.*
CASE NO. 3:06-cv-00054-TMB
PAGE 9

II.  **BECAUSE IT WAS NOT AN UNEQUIVOCAL ACCEPTANCE OF ANY OFFER, AVEC'S FEBRUARY 20, 2004 LETTER COULD NOT HAVE OPERATED AS A VALID ACCEPTANCE EVEN IF IT WERE TIMELY.**

AVEC's February 20, 2004 letter could not have been an acceptance of Crowley's December 1, 2003 offer because it was untimely. Even if timely, however, the February 20, 2004 letter could not have been a valid acceptance of Crowley's offer because the letter by its own language required further "review" and further written agreement "to complete the bid award process." This cannot, as a matter of law, be an acceptance.

In *Valdez Fisheries Development Association, Inc. v. Alyeska Pipeline Service Company*, 45 P.3d 657 (Alaska 2002), the Court addressed a bid solicitation and response which began with Alyeska Pipeline Service Co. sending "many companies … a letter soliciting proposals for [a] wildlife rehabilitation center." *Id.* at 663. Valdez Fisheries Development Association submitted a response to the solicitation. *Id.* After Alyeska invited all bid applicants to resubmit lower cost bids, Valdez Fisheries submitted a revised proposal with three alternative offers under which Alyeska would lease property to serve as a wildlife center for three different possible terms and prices. At the same time, Valdez Fisheries reached an agreement with another party, Sea Hawk Seafoods, Inc., which was contingent upon Valdez Fisheries reaching a contract with Alyeska.

On May 6, 1994 Alyeska responded to Valdez Fisheries' revised proposal in a letter. The letter stated in relevant part:

> We have completed our review of the revised proposals received in response to our invitation TAPS/5890 for A150 Wildlife Rehabilitation Center.
>
> This is to inform you that based on a thorough evaluation of all factors, you have been selected as the winning bidder. Your proposal is deemed to best meet our requirements for this facility.

48381v6

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
*Crowley Marine Services, Inc. v. Alaska Village Electric Cooperative, Inc.*
CASE NO. 3:06-cv-00054-TMB
PAGE 10

> *We intend to begin the process of negotiating a contract as soon as possible. For your planning purposes, we would like to begin the discussions the week of May 16, 1994. You will be contacted by telephone to schedule a place and time to meet.*
>
> *We look forward to a successful association between our two companies ….*

*Id.* (emphasis added by Alaska Supreme Court). Alyeska subsequently declined to proceed with finalization of a contract. *Id.* at 664. Sea Hawk sued Valdez Fisheries for breach of their contingent agreement, and Valdez Fisheries filed a third party complaint against Alyeska.

Based upon the language of the Alyeska May 6, 1994 letter, the Alaska Supreme Court upheld the trial court's dismissal on the pleadings of Valdez Fisheries' complaint against Alyeska. The Court first noted that, under Alaska law, "a valid contract requires 'unequivocal acceptance by the offeree.'" *Id*. The Court found that as a matter of law there was no such "unequivocal acceptance" set forth in the May 6, 1994 Alyeska letter. The Court reasoned that the letter was not an acceptance of Valdez Fisheries' offer, but instead a mere equivocal statement that Alyeska intended to work with Valdez Fisheries:

> The pertinent allegations are found in the text of Alyeska's May 6, 1994 "winning bid" letter, set out verbatim in the third party complaint. The letter's second paragraph contains language most strongly supporting Valdez Fisheries' contract claim. It states, "you have been selected as the winning bidder." But this language does not unequivocally express acceptance because it is susceptible to at least two alternative interpretations. These words could mean either "we accept your bid as written," or "we have chosen you as the contractor with whom we will negotiate." The remainder of the letter fully resolves this ambiguity. The letter's next paragraph, also set out in the third party complaint, states that "[w]e intend to begin the process of negotiating a contract as soon as possible." *This passage requires a conclusion that Alyeska was not communicating an unequivocal acceptance of Valdez Fisheries' offer.*

48381v6

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
*Crowley Marine Services, Inc. v. Alaska Village Electric Cooperative, Inc.*
CASE NO. 3:06-cv-00054-TMB
PAGE 11

*Id.* (emphasis added).

The letter purporting to award a bid to a contractor in *Valdez Fisheries* is directly comparable to the letter in the present case. First, AVEC's February 20, 2004 letter was styled a "notice of award." [Complaint, Exhibit C at 1]. It then stated that "area contract awards" were made in four bid "areas" to Crowley. Thus, as in *Valdez Fisheries*, the letter addressed award of a bid to a specific bidder after the course of bid solicitations.

But, as also in *Valdez Fisheries*, "[T]his language does not unequivocally express acceptance because it is susceptible to at least two alternative interpretations. These words could mean either 'we accept your bid as written,' or 'we have chosen you as the contractor with whom we will negotiate.' *Valdez Fisheries*, 45 P.3d at 664. And, as in *Valdez Fisheries*, this ambiguity is dispositively resolved here by subsequent language in the February 20, 2004 AVEC letter indicating that the second interpretation – "'we have chosen you as the contractor with whom we will negotiate'" – is the correct interpretation.

The February 20, 2004 AVEC letter states in relevant part as follows:

> To complete this award process, a review of expectations, concerns and any conditions that may affect delivery schedules or the pricing structure will be finalized in writing over the next few weeks, and completed no later than March 12th.

[Complaint, Exhibit C at 1].

First, by stating that a further process was necessary "to complete this award process," it made plain that the award process was incomplete at the time of the letter. Second, the language meant that fundamental aspects of any possible contract remain subject to further "review." *Id.* These included "expectations, concerns, and any conditions that may affect delivery schedules or the pricing structure." This is a call for further negotiation, not an unequivocal acceptance.

48381v6

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
*Crowley Marine Services, Inc. v. Alaska Village Electric Cooperative, Inc.*
CASE NO. 3:06-cv-00054-TMB
PAGE 12

Third, and perhaps most fundamentally, the language made clear that a further agreement in writing would be necessary "to complete this award process."

As a matter of law this language cannot be an acceptance, much less an unequivocal one. On the contrary, this language on its face establishes that a further process of negotiation, to be "finalized in writing," was necessary in order to address fundamental aspects of a possible agreement. These included not just any overarching "concerns" and "expectations," but "any condition that may affect … the pricing structure." Far from an unequivocal meeting of the minds, as in *Valdez Fisheries* the letter in this case is "not an unequivocal acceptance but, at most, … an agreement to negotiate." 45 P.3d at 664.

This result, as in *Valdez Fisheries*, is justified on alternative grounds. The *Valdez Fisheries* Court noted that "Valdez Fisheries' proposal contained three alternative lease proposals that differed significantly with respect to the duration and monthly rent for any lease." Thus, the Court then held, "even if we were to interpret Alyeska's letter to say unequivocally that 'we accept your offer,' we could not say which of the three offers it was accepting …." The Court concluded that "the significant differences in the alternatives confirmed that the May 6th letter was not an unequivocal acceptance but, at most, was an agreement to negotiate."

This alternative rationale is also applicable here. As in *Valdez Fisheries*, the bid offer here contained alternatives. Crowley's offer of December 1, 2003, in part contained bids at "fixed prices" as well as bids for indexed prices. The fixed price bid expired on December 4, 2003. The index price offer expired on January 15, 2004. As in *Valdez Fisheries*, however, it is impossible to determine which offer AVEC may have been referencing or purporting to accept. The interpretive situation is not helped by the fact that both December 4 and January 15 were

48381v6

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
*Crowley Marine Services, Inc. v. Alaska Village Electric Cooperative, Inc.*
CASE NO. 3:06-cv-00054-TMB
PAGE 13

long since past by the time the February 20 letter was received, so the Court cannot simply say that the letter intended to accept the open offer; both offers were long since closed.

In sum, *Valdez Fisheries* is squarely on point and dispositive here. The effect of the February 20, 2004 AVEC letter is directly analogous to the Alyeska letter in *Valdez Fisheries*, and the legal effect in each case must be and is identical. Both because it is not an unequivocal acceptance, and because it is ambiguous as to which alternative proposal it purports to accept, the February 20, 2004 letter could not be an acceptance of Crowley's expired bids even if it had been timely received.

### III.    THIS ISSUE CAN AND SHOULD BE DECIDED ON A MOTION FOR JUDGMENT ON THE PLEADINGS.

Pursuant to Federal Rule of Civil Procedure 12(c), the Plaintiff may move the Court for judgment on the pleadings. Fed. R. Civ. P. 12(c). Judgment on the pleadings is proper when, taking all of the allegations in the pleadings as true and construed in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *See Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004) (affirming dismissal on the pleadings). Thus, the standard under Federal Rule 12(c) is the same as the standard under Alaska Rule of Civil Procedure 12(b)(6). *Compare id. with Valdez Fisheries*, 45 P.3d at 664-65.

As in *Valdez Fisheries*, *supra*, no discovery is necessary in order to decide the important question of whether the documents created a contract. Instead, this question may be decided on a motion for judgment on the pleadings. Here, the authenticity of the documents is not at issue. Nor is the date on which they were sent or received. The only issue is the effect of those documents, and that is a limited issue of law for a judge to decide. *Valdez Fisheries*, 45 P.3d at

48381v6

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
*Crowley Marine Services, Inc. v. Alaska Village Electric Cooperative, Inc.*
CASE NO. 3:06-cv-00054-TMB
PAGE 14

665 n.13. The undisputed facts and documents are so similar to those of *Valdez Fisheries* that there can be little question about the propriety under Alaska law of deciding it summarily.

Nor ought there be question about the practical value of doing so. The parties dispute the effect and meaning of the Invitation to Bid, Crowley's responsive bid proposal, and AVEC's February 20 letter. [*Compare* Complaint ¶¶ 50-55 *with* Answer ¶¶ 50-55]. This is a fundamental threshold issue in this case. There is no reason not to rule at this early stage. Thus judgment is proper because Crowley is entitled to it.

Ruling on this question at this time will also conserve resources, including judicial resources. If, as Crowley believes, the documents failed to create a binding contract, then there will be no need for the parties to conduct extensive and costly discovery in order to determine the precise meanings of all of the terms of each of those documents.

Moreover, a decision on the present motion may make it unnecessary to conduct discovery on or litigate some of the other claims Crowley has brought, such as misrepresentation, estoppel, or some of its alternative claims. Crowley's second count alleges that the ITB included false representations that harmed Crowley to the degree the ITB formed the foundation of a contract or binding obligation. [Complaint ¶¶ 57-91]. It also claims that the February 20 letter included false representations that harmed Crowley to the degree the February 20 letter gave rise to a contract or binding obligation. [Complaint ¶¶ 92-101]. AVEC has disputed these claims. [Answer ¶¶ 76,78, 89, 91, 99, 101]. Crowley's third count alleges that the ITB included false representations that AVEC should be estopped from now denying. [Complaint ¶¶ 102-117]. AVEC would deny those representations by claiming that the February 20 letter was effective as an acceptance. [Complaint ¶¶ 112, 117]. AVEC disputes that it should be so estopped. [Answer

48381v6

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
*Crowley Marine Services, Inc. v. Alaska Village Electric Cooperative, Inc.*
CASE NO. 3:06-cv-00054-TMB
PAGE 15

¶¶ 112, 117]. Crowley has also made alternative claims that present damages if, and to the degree, that the ITB, Crowley's Offer, and the February 20 letter created a contract or binding obligation. [*See, e.g.*, Complaint ¶¶ 150-51, 158, 159, 169, 170, 172-73]. AVEC disputes these claims. [*See, e.g.*, Answer ¶¶ 150-51, 158, 159, 169, 170, 172-73].

If the Court decides, as Crowley believes it should, that no contract or binding obligation was created by the ITB, Crowley's Offer, and the February 20 letter, then it may be unnecessary to resolve each of these disputes. Such a decision will, thus, substantially narrow the lawsuit, the discovery obligations, and the costs in money and time associated with both.

The decision may also sharpen and clarify the commercial and legal issues in actual and meaningful dispute. This, in turn, may allow the parties, working alone or with the court, to fashion a commercial resolution of this dispute. For all of these reasons, both practical and jurisprudential, the Court should exercise its power to immediately decide this important issue without delay.

## CONCLUSION

Crowley has presented to the Court a narrow legal question, susceptible to the Court's immediate judgment, and requested that the Court settle the issue once and for all. There are no disputed issues of fact to cloud the issue. Because no contract could have been created by the bid solicitation, bid proposal, and February 20 letter, Crowley is entitled to judgment as a matter of law. For all of these reasons, the Motion for Partial Judgment on the Pleadings should be granted.

48381v6

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
*Crowley Marine Services, Inc. v. Alaska Village Electric Cooperative, Inc.*
CASE NO. 3:06-cv-00054-TMB
PAGE 16

DATED at Anchorage, Alaska this 17th day of May, 2006.

        s/ Douglas J. Serdahely
PATTON BOGGS LLP
ABA No. 7210072
601 W. 5th Avenue, Suite 700
Anchorage, Alaska 99501
Tel: (907) 263-6310
Fax: (907) 263-6345
E-mail: dserdahely@pattonboggs.com

Attorneys for Plaintiff Crowley Marine Services, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2006, a copy of the Memorandum In Support Of Motion For Partial Judgment on The Pleadings was served electronically on:

**John A. Leman, Esq.**
jal@khe.com

**Jason M. Gist**
jmg@khe.com

**Paul J. Jones, Esq.**
pjj@khe.com

By:    s/Nina E. Bingham
      Nina E. Bingham, Legal Secretary
      PATTON BOGGS LLP

48381v6

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
*Crowley Marine Services, Inc. v. Alaska Village Electric Cooperative, Inc.*
CASE NO. 3:06-cv-00054-TMB
PAGE 17