Douglas J. Serdahely, Esq. (Alaska Bar No. 7210072)
dserdahely@pattonboggs.com
PATTON BOGGS LLP
601 W. Fifth Avenue, Suite 700
Anchorage, Alaska 99501
Telephone:  (907) 263-6310
Fax:  (907) 263-6345

*Attorneys for Plaintiff Crowley Marine Services, Inc.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CROWLEY MARINE SERVICES, INC., ) | |
| ) | |
| Plaintiff, ) | Case No. 3:06-cv-00054-TMB |
| ) | |
| vs. ) | **REPLY TO OPPOSITION TO** |
| ) | **MOTION FOR PARTIAL** |
| ALASKA VILLAGE ELECTRIC ) | **JUDGMENT ON THE** |
| COOPERATIVE, INC., ) | **PLEADINGS** |
| ) | |
| Defendant. ) | |
| ) | |

## INTRODUCTION

This motion presents a fundamental issue of law which must be resolved in this case: whether AVEC's untimely and ambiguous letter of February 20, 2004, failed as a matter of law to form a contract.

The question presented is narrowly framed but of key importance.  The few relevant documents are factually uncontroverted and properly set forth in the pleadings.  Their construction is indisputably an issue of law for this Court.  Further factual development will have no bearing on the issue.  The documents, and their legal effect, will not change.  The question must be decided, now or later.  Because the decision will greatly expedite resolution of this litigation, and because it is fully framed by the pleadings, it can and should be determined now. *See Valdez Fisheries Dev. Ass. v. Alyeska Pipeline Svc.,* 45 P.3d 657 (Alaska 2002) ("Valdez Fisheries").

49455v4

AVEC's attempts to distinguish *Valdez Fisheries* are wrong as a matter of law. Crowley did not waive the deadline for expiration of its offer or other admitted "defects" in AVEC's February 20 letter. Acceptance must be unequivocal, and plainly here it was not. Moreover, the contention that Crowley waived defects in AVEC's purported acceptance is in any event legally erroneous. A contract cannot be waived or estopped into existence. It is black letter law that "equity does not make contracts for parties, it enforces contracts which parties make for themselves." 27A Am.Jur.2d *Equity* § 64 (1996). No contract was formed on the documents at issue in this motion.

Although AVEC is in full command of any facts establishing an agreement of the parties, and indeed has now been given another opportunity to contest this motion by virtue of an Amended Answer, nothing in AVEC's Opposition establishes a material issue of disputed fact or defeats judgment as a matter of law. AVEC's erroneous contention that its affirmative defenses necessarily defeat judgment on the motion presented is a misapplication of the legal standard for judgment on the pleadings, and specifically wrong on the allegations here.

The new documents incorporated in AVEC's Amended Answer [Docket No. 29] do not change the issue presented here. Contrary to AVEC's contentions, no new issues of fact relevant to this motion are presented by their affirmative defenses or by new documents incorporated in their Amended Answer. The documents at issue here remain the documents at issue. They either have or do not have the legal effect of forming a contract. That effect is not altered by AVEC's *post hoc* claim that, after the fact, Crowley later waived or should be estopped to deny the non-existence of a contract.

Nor is this result changed by AVEC pleading a single, one-line generic legal assertion that a contract was formed. Under established principles of pleading, such a conclusory legal assertion is entitled to no weight. "The motion for judgment on the pleadings admits all facts well pleaded, but does not admit conclusions of law …" 5 Wright & Miller, *Federal Practice and Procedure*, Civil 3d. § 1368 at 230, 243 (2004). It does not create a material issue of fact because no facts have been pled disputing the actual claim presented in this motion. It does not defeat judgment as a matter of law because a claim that a contract was separately formed is irrelevant to this motion.

AVEC's equitable defenses of waiver and estoppel are also irrelevant to the legal question presented here. An equitable defense, by its very nature, cannot establish whether a legal obligation, such as a contract, exists. That is a question of law. Instead, equitable remedies are properly reached only after a determination of legal rights and remedies. Here**,** because "equity may not make or alter a contract," the threshold question is whether such a contract exists. That is the question posed by this motion.

Equally wrong is the red herring advanced by AVEC that this case is different from *Valdez Fisheries* because of later conduct of the parties demonstrating a commercial relationship. Crowley has never denied that there was an ongoing business relationship between the parties. On the contrary, it has expressly asserted its own claims on that basis. The question is not whether the parties had a commercial relationship, but whether they reached a threshold written agreement establishing its terms. That question is identical to *Valdez Fisheries*. This issue is equally fundamental here because AVEC's own Invitation to Bid purported to specify that an integrated written contract would be formed[1] by a specific and time-limited process.[2] It is nonsense for AVEC to claim that whether such a contract was formed by the very process it established is not the key threshold issue in this case.

Ruling on this motion will greatly focus the parties' efforts in litigation and expedite resolution of this case. AVEC has asserted that there is some valid contract between itself and Crowley. If AVEC's February 20 letter was not as a matter of law a valid acceptance, then AVEC must separately prove an effective offer and acceptance forming a contract. AVEC would have to show a separate meeting of the minds on their claim that the contract included price caps. Determination of this motion will substantially clarify whether the parties are disputing the enforceability of a threshold written contract, or instead disputing what legal effect

---

[1] The ITB purported to specify that it formed the "entire agreement" of the parties, Complaint Exhibit A at 11, [Docket No. 1] that any resulting offer and acceptance "shall be expressly limited to the terms and conditions as shown on this form and its attachments," id. at 4, and that "a bid shall be rejected when the bidder makes a material change in the specifications or terms" of the ITB. Id. at 5.

[2] Bids were required on December 1, 2003. ITB, Complaint Exhibit A at 1. Formal awards were to be made within 10 working days thereafter "unless a longer period is established due to special considerations such as selective rebidding." *Id.* An offer was only to be considered valid for 45 days. *Id.* at 5.

should be given to their actions in its absence.

Because there is no material issue of fact and Crowley is entitled to judgment as a matter of law, this motion should be granted.

## I.    CROWLEY IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

### A.    None of AVEC's Factual Allegations In Its Amended Answer Dispute Issues Of Material Fact Upon Which This Motion Is Based

Notwithstanding AVEC's filing of an Amended Answer, no facts material to this motion have been disputed.  Specifically, AVEC has not changed any of its responses to the "Factual Allegations" or to "Count I" of Crowley's Complaint (the Count on which Crowley's claim for judgment rests).  [*Compare* Amended Answer at ¶¶ 6 – 55 *with* Answer ¶¶ 6 - 55.]  While AVEC conclusorily asserts it has "denied critical portions of Crowley's Complaint," Opposition at 6, the Court may search AVEC's pleading in vain for the identification of any alleged disputed issue of material fact actually relevant to this motion.

Rather, the new pleading solely amends AVEC's asserted affirmative defenses.[3]  The incorporated documents relate solely to those defenses.  Notably, these affirmative defenses and new documents solely address events *subsequent* to those set forth in the three documents which are the basis of this motion.

As will be seen, Crowley's assertion of affirmative defenses—its conclusory legal allegation that a contract was formed, and its equitable claims of waiver and estoppel—as matter of law do not defeat judgment on the pleadings.  *See* § II below.  First, however, this motion addresses the narrower but equally erroneous contention that this case is not controlled by *Valdez Fisheries*.

### B.    Crowley Is Entitled To Judgment As A Matter of Law Pursuant To Valdez Fisheries

Under *Valdez Fisheries*, Crowley is entitled to judgment as a matter of law that the present documents do not create a contract if AVEC's purported acceptance was untimely or equivocal.  Either is sufficient to prevent a valid acceptance.

---

[3] The Amended Answer filed by AVEC differs from the original Answer in only one respect: AVEC has changed that part of the Answer labeled "Defenses," beginning on page 25 of the Amended Answer of Defendant Alaska Village Electric Cooperative, Inc.

1.    **AVEC's February 20th letter was indisputably untimely.**

There is no claim that the February 20th letter was a timely acceptance.  Rather, the only claim is that untimeliness was waived.  This contention is refuted below.  The untimeliness alone renders the purported acceptance ineffective.

AVEC sent an invitation to bid demanding responses by December 1, 2003, stating in mandatory terms that a responsive offer "shall be good and firm for a period of forty-five [45] days.…"  ITB at 5.  It further stated in the ITB that it would provide a formal notice of award within 10 working days after submission of bids "unless a longer period is established due to special considerations such as selective rebidding."  Crowley responded with an offer to sell that expired, at its latest, on January 15, 2004.  AVEC did not respond by January 15, 2004.  In fact, AVEC did not respond until February 20, some 35 days late.  That response was untimely by any standard, including AVEC's own, and could not have been a valid acceptance.

2.    **AVEC's February 20th letter was not an unequivocal acceptance.**

AVEC's February 20th letter could not have been an acceptance of Crowley's offer because it was not unequivocal.  At most it was an offer to negotiate.[4]  *Valdez Fisheries* 45 P.3d at 657, 663.

First, the very fact of its unexcused untimeliness makes its objective effect equivocal at best.  The fact that AVEC then proposed further negotiations to be "finalized in writing" is an acknowledgement that the letter could not, at that late date, be sufficient in itself as an acceptance.  But "where parties are expected to draft and execute a formal agreement, their prior negotiations do not constitute a contract."  *Davis v. Dykman*, 938 P.2d 1002, 1008 (Alaska 1997).  *See also Anchorage Chrysler Center, Inc. v. DaimlerChrysler Corp.*, 129 P.3d 905, 917 (Alaska 2006) (holding that when a party agrees to submit and finalize further writings, that party is responsible for finalizing those writings).

Second, the letter was anything but "unequivocal" in its terms and effect.  The very language of the February 20 letter establishes that much more was to be done:

> To complete this award process, a review of expectations, concerns and any conditions that may affect delivery schedules or the pricing structure will be finalized in writing over the next few weeks, and completed no later than March 12th.

---

[4] *See* discussion in Crowley's Memorandum at 7-9.

AVEC asserts that the February 20 letter was not ambiguous because it stated that "Area contract awards are made as follows" and therefore "both parties knew at this time that Crowley had received the contract…."  [Opposition Memo at 15, Docket No. 22.]  In fact, however, the letter stated that "**to complete this award process**" additional steps were required, *i.e.*, a further "review" had to be conducted and "finalized in writing."  This can only objectively mean that, contrary to AVEC's assertion, the award process was **not** complete.

3.      **AVEC's arguments that the February 20 letter's ambiguities are not relevant are inapposite.**

Notably, AVEC does not dispute the ambiguity created by all of this language. [*See* Opposition Memo at 15.]  AVEC instead argues that a contract was formed despite the ambiguity because this additional language only went to non-material terms.  This is both wrong and misses the legal point.

Whether or not the parties agree on all terms or only some, they must manifest their mutual assent to those terms through offer and acceptance.  *Davis*, 938 P.2d at 1006.  The acceptance must be unambiguous and unequivocal.  *Id*.  An acceptance that is susceptible of more than one interpretation is both ambiguous and equivocal.  *Valdez Fisheries,* 45 P.3d at 665-67.  Thus, even if AVEC were correct that all that was necessary was for it to accept the material terms of Crowley's agreement, it remains the case that AVEC's acceptance would be ineffective because of its ambiguity and equivocation.

Second, the contention that the ambiguity was limited to "non-material" terms is objectively wrong.  The need to "complete the award process" is material.  A review of "expectations, concerns, and any conditions that may affect … the pricing structure" is material.  The need for a further agreement to be "finalized in writing" is material.

AVEC claims that the point is moot because discussions and writings related to the delivery schedule were produced.  [Opposition Memo at 15 – 16.]  However, AVEC does **not** allege that any "review of expectations, and concerns and any condition that may affect … the pricing structure" occurred.  This was the fundamental negotiation which would have needed to occur if the parties were in fact to have reached an agreement on prices at a time when, the pleadings reflect, the market was very rapidly changing.

More importantly, the existence of any subsequent agreement would not change whether or not the February 20 letter was a valid acceptance when given. It would instead only mean that the parties allegedly reached a different agreement later. AVEC is free to advance such a claim, but it does not defeat this motion.

Finally, AVEC has argued that the February 20 letter was not ambiguous as to whether fixed or indexed prices were accepted by AVEC because AVEC would not have complied with the bid proposal if it attempted to accept the fixed price offer by its letter on February 20, and because Crowley did not choose a fixed price at which to bill AVEC for fuel delivered in 2004. [*See* Opposition Memo at 21-22.] This argument is astonishing in its audacity. AVEC's February 20 letter was not a timely or unequivocal acceptance of *any* offer. That it was even less compliant with the fixed price offer than with indexed pricing, however, does not reveal which AVEC intended to accept. Nor does Crowley's subsequent conduct make AVEC's intentions on February 20 any more clear. Indeed, AVEC's intentions were not perfectly clear to Crowley until after AVEC began short-paying invoices. [*See* July 9, 2004, Letter, Complaint Exhibit D.]

## C.  AVEC's Allegations Of Waiver And Estoppel Are Erroneous And Inapposite As A Matter of Law

### 1.  Crowley has not waived any rights, including the expired deadline of its offer or other defects in AVEC's purported acceptance of Crowley's bid proposal.

A waiver is the "intentional relinquishment of a known or existing right." *Blood v. Kenneth Murray Ins., Inc.*, 68 P.3d 1251, 1255 (Alaska 2003); *Powers v. United Services Auto. Ass'n*, 6 P.3d 294, 298-99 (Alaska 2000); *Arctic Contractors, Inc. v. State*, 564 P.2d 30, 40 (Alaska 1977). Waiver can be either express or implied. But even if implied, and even if there is prejudice to another party, the waiver must still be direct and unequivocal: "To prove an implied waiver of a legal right, there must be direct, unequivocal conduct indicating a purpose to abandon or waive the legal right, or acts amounting to an estoppel by the party whose conduct is construed as a waiver." *Airoulofski v. State*, 922 P.2d 889, 894 (Alaska 1996). *See also Miscovich*, 875 P.2d at 1301-02; *Milne v. Anderson*, 576 P.2d 109, 112 (Alaska 1978). "[N]eglect to insist upon a right only results in an estoppel, or an implied waiver, when the neglect is such that it would convey a message to a reasonable person that the neglectful party would not in the future pursue the legal right in question." *Wasau Ins. Cos. v. Van Biene*, 847

P.2d 584, 589 (Alaska 1993).

But the only cognizable "right" created by Crowley's offer was a well-established "power of acceptance" in AVEC lasting until expiration of the offer. "The making of the offer, [Corbin] points out, 'creates a power of acceptance in the offeree,' and once the offer has been made there is nothing left for the offeror to do but to wait for the offeree to close the contract." *Spenard Plumbing & Heating Co. v. Wright*, 370 P.2d 519, 525 (Alaska 1962); *see Copper River School Dist. v. Traw*, 9 P.3d 280, 286 and 291, n.28 (Alaska 2000)(citing Restatement 2nd of Contracts at §§ 42 and 43); *Hall v. Add-Ventures, Ltd.*, 695 P.2d 1081, 1090 n.9, (Alaska 1985); *Armco Steel Corp. v. Isaacson Structural Steel Co.*, 611 P.2d 507, 517 (Alaska 1980). This is a right of the offeree, not the offeror. As Corbin explains,

> Courts and writers often speak of the "duration of an offer"; … but … they are thinking of the legal operation of the offer – of the power of acceptance created in the offeree.
>
> At the time of making the offer, the offeror has full control of its terms … and of the length of time during which the power of acceptance shall last. The offer may specify in it the time within which acceptance must occur; if it does so, the power of acceptance is limited accordingly.

Corbin On Contracts, § 2.14, p. 195 (1993).

But even if the term of an offer could somehow be characterized as a waivable "right" of the offeror, the offer represented by Crowley's bid proposal had expired as of January 15. And it is important to bear in mind that AVEC does not allege that Crowley took any action of any kind during the express pendency of its offer which could give rise to any claim of waiver or estoppel. On the contrary, all of AVEC's allegations are of subsequent conduct after its expiration. What, then, was the "existing right" which Crowley allegedly later waived? Plainly, there is none. Once the offer expired Crowley did not and could not have had any identifiable "existing right" which it could waive. This alone defeats AVEC's claim as a matter of law.

Nor does AVEC allege any belated but express or implied unequivocal waiver of the deadline. None of the documents or pleadings raise any material issue of fact concerning an unequivocal waiver of the deadline. If they had, AVEC—which under *Valdez Fisheries* and in reality has knowledge of any such purported unequivocal communication—would have alleged or identified it. This Court is not required to accept a "pro forma" allegation as creating a

material issue of fact.  5 Wright and Miller, *Federal Practice and Procedure*, Civil 3d § 1368 at 230, 243 (2004).

In an attempt to avoid this obvious problem, AVEC turns to a wholly novel theory:  that Crowley waived a "right to claim there is no contract."  But this is first merely a vague and legally incoherent version of the contention that, after expiration of its offer, Crowley waived the deadline.

This is not a right at all, much less an "existing" right, but a negation.  Rights that may be waived are affirmative rights secured by the Constitution, statutes, contract or the like.  *See* 28 Am.Jur.2d, *Estoppel and Waiver* § 210 at 614 (2000).  A contract secures a legally enforceable right.  The absence of a contract is simply a nullity.

Indeed, AVEC's claim is precisely backwards as a matter of law.  A contract is a legally enforceable right which must be established.  "The formation of a valid contract requires an offer encompassing all essential terms, unequivocal acceptance by the offeree, consideration, and an intent to be bound."  *Davis*, 938 P.2d at 1006.  A contract cannot be waived or estopped into existence.  It is black letter law that "equity does not make contracts for parties, it enforces contracts which parties make for themselves."  27A Am.Jur.2d *Equity* § 64 (1996).  Here, AVEC is wrongly attempting to avoid its own failure to make a valid acceptance, and "bootstrap" a contract into existence through a purported equitable defense, by claiming that Crowley must prove it did not waive its non-existence.

In another variation on this argument, AVEC similarly contends that Crowley should be equitably estopped from asserting there is no contract with price caps.  AVEC first misconstrues this doctrine.  The Alaska Supreme Court has clearly and repeatedly held that equitable estoppel is *defensive* in nature "and can be used only for preventing the opposing party from raising a particular claim or right."  *Simpson v. Murkowski*, 129 P.3d 435, 449 n.18 (Alaska 2006).  But AVEC is the party claiming that the documents at issue form a contract.  The effect of this argument would again be to substitute an equitable defense for a valid acceptance, and to force Crowley to perform the contract as if it were validly accepted.  But AVEC has not pled the only affirmative estoppel doctrine – promissory estoppel – that could enforce an otherwise legally nonexistent right.  *See* discussion*, infra* nn.13, 14 and accompanying text.

Equitable estoppel is inapposite and irrelevant in any event irrelevant to the question of whether the February 20 letter validly accepted any offer. Equitable estoppel "requires the assertion of a position by conduct or word, reasonable reliance thereon by another party, and resulting prejudice." *Miscovich*, 875 P.2d at 1302. The proponent of the estoppel bears the burden of proving each element. *Id.* AVEC cannot possibly have relied, reasonably or otherwise, on subsequent communications in March or later in order to untimely respond to an expired offer in February. AVEC has not cited any authority for the novel legal theory, necessary for its case, that delivering fuel pursuant to a later purchase order is an assertion that prior negotiations resulted in a contract. Even if it could, AVEC has not offered any explanation of how this would make the defects in its acceptance disappear.

These broad and vague contentions not only invert the nature of a contract, and the burden of proof to establish its existence, but they beg the question: what contract, on what terms? Merely to claim waiver and estoppel of a contract does not solve the problem: there still must be a defined contract with established terms which, it is alleged, a party should not be equitably allowed to dispute.

In any event, AVEC's waiver and estoppel claims both require "direct, unequivocal" waiver or conduct by Crowley. [Opposition Memo at 12.] Leaving aside the obvious contradiction in attempting to establish a contract not by unequivocal acceptance but unequivocal waiver, nothing remotely approaching this level of certitude has been alleged. For example, many of AVEC's allegations are of mere silence, and this cannot be unequivocal because it could be taken either as assent, ignorance, or disagreement. As will be seen below, the new documents incorporated with AVEC's pleading and affirmative defenses are fully consistent with completely different legal characterizations. That is sufficient to demonstrate they are not unequivocal waivers. Thus, in *Airoulofski v. State*, 922 P.2d 889 (Alaska 1996), a case erroneously relied upon by AVEC, the Court found that even a delay and silence of seven years in asserting legal rights was not an unequivocal waiver or estoppel because plaintiff's conduct was consistent with multiple interpretations. *Id.*

Indeed, the contention here that a contract must have been formed by these documents, or its non-existence must have been waived, because the parties later continued to conduct business is simply legally erroneous and a logical fallacy. It amounts to the ancient logical

fallacy *post hoc, ergo propter hoc* — "after, therefore because." As common sense establishes, parties can and do conduct business all the time without contracts. That simply poses a separate question of what legal effect should be given to their conduct in that event.

**2.       AVEC's reliance on *dicta* in *Beirne* is misplaced.**

AVEC's reliance on *dicta* in *Beirne v. Alaska State Housing Authority*, 454 P.2d 262 (Alaska 1969), as authority for the proposition that an offer deadline may be waived is misplaced and inapposite.

In *Beirne*, the 1969 Alaska Supreme Court summarily rejected an appeal brought by a disgruntled *pro se* third party bidder on the grounds that "public policy" and "basic fairness" required setting aside a real estate sale already made to another party by the Alaska State Housing Agency in favor of plaintiff's untimely but higher offer. The case had been earlier dismissed at the close of plaintiff's case at trial for failure to state a claim for relief.

The sale had been consummated by a final payment made outside a six month option period for performance characterized by the Court as a counteroffer, and after an earlier partial payment made by the buyer. After notice that the sale was being completed, the plaintiff submitted a bid which was received only after completion of the sale. The Court found that a contract had already been completed with the first buyer and that "There is nothing there that is unfair or against public policy."

The language used by the Court suggesting waiver of an offer deadline is clearly *dicta*.[5] The Court's rejection of the *pro se* plaintiff's inchoate appeal on public policy grounds was sufficient to uphold the dismissal below. Under these circumstances it mattered little what theory the Court employed in discussion. Notably, the Court did not expressly find a waiver occurred; it merely cited evidence which could have supported the dismissal below. Indeed, as seen below, the Court's opinion also expressly states or suggests two alternative rationales.

Most importantly, because the existence of a contract was not disputed by its actual parties, the issue of waiver was not properly joined in the case. Nor was it the subject of any

---

[5] The Court suggested that "In such a case there is a new offer or a waiver of the termination date of the original offer, and if the offer is accepted a new contract is formed." The Court found "evidence" in ASHA's notice to plaintiff that the contract was being completed, that "ASHA was not going to insist upon the six months time period for payment by Waldrop—that the time limitation provision of the counteroffer had been waived." 454 P.2d at 265.

proper claim for relief by the *pro se* third party, as is demonstrated by his prior dismissal for failure to state a claim.[6]  The Court did not apply its own standards for waiver analysis, nor does the record disclose the parties' actual transactions sufficiently to permit such an analysis.  In short, while the Court apparently found it convenient to speak in shorthand of waiver as part of resolution of a meritless case, this was pure *dicta*.

This alone is sufficient basis to give *Beirne* scant weight here.  Nevertheless, there is another fundamental reason as well.  *Beirne* makes little or no sense if read, as AVEC suggests, as a case of contract formation by waiver.  Instead, the result in *Beirne* is instead far more consistent with other theories suggested in the decision:  either of partial performance of a payment obligation, or of a "new offer" forming a contract.  454 P.2d at 265.  Those theories are, in turn, fully consistent with the uniform weight of contract law authority, particularly including those relied upon by the Court itself.

In fact, the six-month option or counteroffer described by the Court is better understood as a performance deadline.  ("One of the terms of ASHA's counteroffer to sell the property to Waldrop was that the balance … was to be paid within a six month period.…"  *Id.* at 264.)  Partial payment or performance had already been made.  *Id.*  While the record in *Beirne* does not fully disclose the actual dealings of the parties to the contract, there can scarcely be any doubt that *acceptance* of the contract counteroffer occurred long before the final payment completed its *performance* – indeed, the plaintiff was advised prior to the payment that the buyer "had completed financing and the sale was being completed."  *Id.*  Thus *Beirne* concerned *performance* of a real estate contract, and possible waiver of a performance deadline, where partial payment has been made, not the lapse of an offer to contract.

Viewed as such a performance case, *Beirne* is absolutely consistent with the authority upon which it relies.  Thus, *Beirne* closely tracks the only relevant case it cites, *Nichols v. Nicholas*, 217 Md. 79, 80-82 (1958), a Maryland land sale case.  *See Beirne*, 454 P.2d at 265 n.6.  Nichols was a case in which a right to full performance of a property sale was upheld in light of plaintiffs' partial payment performance.  Similarly, the section of Corbin on Contracts cited by *Beirne* dealt only with late performance of an existing contract, not with waiver of an offer

---

[6] A third party challenging the existence of a contract reached by others would obviously have, at most, limited grounds to do so.

deadline in the creation of a wholly new contract.[7]  These authorities are apposite in *Beirne* only because that case in fact concerned performance.  None, including *Beirne*, are relevant here, because there is no such prior partial performance alleged.

Nevertheless, even if viewed as a case involving expiration of an offer deadline,  *Beirne* is only consistent with established authority if understood, as the Alaska Supreme Court suggested, as a "new offer" after the deadline.  The treatises relied upon by the Court for its statements of the law of offer and acceptance, Corbin and Williston,[8] make plain that when an offer contains a fixed time to respond, any purported late acceptance of the offer actually acts as a new or counteroffer because "the power of acceptance" of the original offer has expired:

> "If a definite time is fixed for acceptance, the offeree knows when a purported acceptance is later than the time specified and whether the power of acceptance has expired.  In such a case, there seems to be no reason to give a belated attempt any effect other than that of a counter-offer."

J. Perillo, 1 Corbin on Contracts, Rev.Ed., § 3.20 at 410 (1993).  This analysis of a "new offer" or counteroffer, based on expiration of an earlier "power of acceptance," is black letter law.[9]

Here this means that AVEC's February 20th letter can only be properly understood as a new counteroffer or offer to negotiate, not a valid acceptance created by a subsequent waiver.

---

[7] *See Beirne*, 454 P.2d at 265 n.6; A. Corbin, 3A Corbin on Contracts § 754 at 489 (1960) (because this treatise is no longer available in the public law library, a copy is attached for the benefit of the Court as Exhibit A).

[8] Corbin on Contracts and Williston's Law of Contracts (now Williston on Contracts) (hereafter "Corbin" and "Williston" respectively).  *See Beirne*, 454 P.2d at 264 n.n. 1, 2.

[9] "The offer may specify in it the time within which acceptance must occur; if it does so, the power of acceptance is limited accordingly."  Corbin, § 2.14 at 195; Accord 17A Am.Jur.2d, Contracts § 76: Effect of late or defective acceptance at 104 (2004) ("A late or defective acceptance is a counteroffer…."); P. Lord, Williston on Contracts, 4th ed., § 5.5 at 651 (1990) (the offeror is at liberty to dictate terms including "acceptance within a specified time, and if no acceptance is made within that time, the power of acceptance necessarily expires."); American Law Institute, Restatement of the Law (Second) of Contracts, § 41 at 109 ("an offeree's power of acceptance is terminated at the time specified in the offer.…") ("Restatement"); Restatement, Comment a ("Just as the offer may prescribe the identity of the offeree [] or the form of the acceptance [], so it may prescribe a time limit for acceptance.  Such a limitation must be complied with.")

## II.  AVEC'S AFFIRMATIVE DEFENSES DO NOT RAISE QUESTIONS OF MATERIAL FACT OR DEFEAT JUDGMENT ON THE PLEADINGS AS A MATTER OF LAW

### A.  <u>Affirmative Defenses Do Not Always Defeat Judgment On The Pleadings</u>

AVEC repeatedly makes the claim that mere assertion of affirmative defenses defeats a motion for judgment on the pleadings.  This contention is overbroad, unsupported as advanced, and legally inapposite.  Whether affirmative defenses "usually" defeat a judgment on the pleadings is not at issue,[10] and adds nothing to the requisite analysis for this court.  Instead, affirmative defenses are simply subject to the same inquiry necessary for any judgment as a matter of law:  whether the moving party is entitled to judgment as a matter of law, and whether there are material issues of fact which prevent entry of judgment.

Wright & Miller explain as follows:

> A <u>material issue of fact</u> that will prevent a motion under Rule 12(c) from being successful may be framed by an express conflict on a particular point between the parties' respective pleadings.  <u>It also may result from the defendant pleading new matter and affirmative defenses in his answer</u>.…  Thus, when material issues of fact are raised by the answer and the defendant seeks judgment on the pleadings on the basis of this matter, his motion cannot be granted.

Wright and Miller, *supra* at 253-54.  Such an analysis is consistent with the law governing judgment on the pleadings and with the nature of affirmative defenses.

The moving party in a motion for judgment on the pleadings must "clearly establish[] that

---

[10] In support of its contention AVEC quotes the 1969 edition of Wright & Miller, *Federal Practice and Procedure*, at Vol. 5, § 1368, for the proposition that "[T]he plaintiff may not secure a judgment on the pleadings when the answer raises affirmative defenses that, if proved, would defeat recovery."  [Opposition at 5.]  Interestingly, the current 2004 edition of this treatise does not repeat this broad assertion but instead more precisely states, "[T]he plaintiff may not secure a judgment on the pleadings when the answer raises <u>issues of fact</u> that, if proved, would defeat recovery."  *Id.* at 254, (emphasis added).  As will be seen, the distinction is important, and highlights the limitations of plaintiff's argument. So, too, does the other authority upon which defendants rely, *General Conference Corp. of Seventh-Day Adventists v. Seventh Day Adventist Congregational Church*, 887 F.2d 228 (9th Cir. 1989).  This case also cites the same 1969 section of Wright & Miller but for the court's more careful statement that "[If] the defendant raises an affirmative defense in his answer it will <u>usually</u> bar judgment on the pleadings." *Id.* at 230.

no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." 5 Wright and Miller, *Federal Practice and Procedure*, Civil 3d § 1368 at 223 (2004). This is essentially no different than the standard for summary judgment. *Living Designs v. E.I. Dupont De Nemours*, 431 F.3d 353, 359 (9th Cir. 2005). Mere assertion of an affirmative defense does not, by some inevitable process, defeat a legal claim. Instead, any defense must raise relevant legal defenses or material issues of fact to do so.

Plainly, not all affirmative defenses necessarily raise legal defenses or material fact issues.[11] For example, in the *Seventh Day Adventist* case, far from following any ironclad rule that affirmative defenses necessarily bar such a judgment, the Court carefully examined the *pro se* defendant's pleadings to find that they raised a specific, relevant legal defense to the trademark infringement claim presented which, if proven, would necessarily defeat judgment on the pleadings. *Id.*[12]

This is particularly important here, where Plaintiff seeks only a partial judgment on the pleadings on a single count. *See, e.g., Carmen v. San Francisco United School District*, 982 F. Supp. 1396, 1401 (D.C. N.D. Cal. 1997)(granting partial judgment on the pleadings and recognizing that "it is common practice to apply Rule 12(c) to individual causes of action"), *affirmed* 237 F.3d 1026, 1028 n.2 (9th Cir. 2001). Here an affirmative defense must necessarily defeat the claim advanced in the present motion, not some other potential claim in the litigation.

---

[11] An affirmative defense is, in the first instance, neither conceptually defined by Civil Rule 8(c) nor susceptible to clear definition beyond the listed defenses. The rule expressly permits pleading "of any other matter constituting an avoidance or affirmative defense." *Id.* Because the rule is open-ended and these terms are undefined, what in the first instance comprises such a defense is disputable. *See generally* Wright and Miller*, supra*, at § 1271. Rule 8(c) also recognizes another common related pleading problem by permitting conversion of an affirmative defense to a counter-claim where appropriate, and vice versa, where incorrectly pled. *Id.* Here, for example, pleading a contract would appear in the first instance to be an affirmative claim for relief, not a defense, since AVEC is the party claiming that such an agreement should be found and enforced.

[12] The Court found that defendant had alleged the established legal defense that the mark was generic. *Id.* at 231 [citation omitted]. The Court then concluded, "Even assuming everything the [plaintiff] alleges is true, the defendants are not liable for trademark infringement if they prove the mark was generic." *Id.* The court also found that statements made in answer by defendant factually contested a necessary element of plaintiff's trademark infringement claim, a required proof of "likelihood of confusion" over the mark.

**B.**     <u>**AVEC's Contract Claim Does Not Create A Material Issue Of Fact Or Prevent**</u>
<u>**Judgment As A Matter Of Law**</u>

AVEC's third argument from its affirmative defenses generically asserts that "the parties
formed a valid contract that included price caps."  [Amended Answer, Section II ¶ 5.]  AVEC
further argues that this creates a question of material fact because "that affirmative defense is not
limited to the three documents that Crowley has chosen for the Court's consideration."
[Opposition Memo at 14.]  AVEC argues that "to determine whether there was a contract, the
Court would need to consider the totality of the circumstances and communications between the
parties to determine what they agreed upon."  *Id.*

First, AVEC has not affirmatively pled any facts of any kind as to the formation, nature
or scope of whatever contract it asserts exists.  Plainly, it has the knowledge to do so since,
pursuant to *Valdez Fisheries*, both parties must be aware of an offer and acceptance forming a
contract.  AVEC's mere assertion in a pleading of a legal conclusion does not create a well
pleaded issue of disputed fact or defeat a motion for judgment on the pleadings.  For purposes of
the court's consideration of 12(c) motions, the moving party "does not admit other assertions in
the opposing party's pleading that constitute conclusions of law, legally impossible facts, or
matters that would not admissible in evidence at trial."  5 Wright and Miller, *Federal Practice
and Procedure*, Civil 3d. § 1368 at 230, 243 (2004) (citing *Hargis Canneries, Inc. v. United
States*, 60 F. Supp. 729 (D.C. Ark. 1945)).  Indeed, "although a court will not grant a Rule 12(c)
motion if a material issue of fact exists, federal judges have been firm in requiring that the issues
be genuine and not based on mere pro forma denials…." *Id.*

Nor does this defeat judgment as a matter of law.  Even assuming that AVEC's contract
affirmative defense did more than state a legal conclusion, it must rest on one of two theories.
AVEC might be asserting that the bid solicitation, proposal, and February 20 letter did in fact
create a binding contract.  If that is the intended understanding of the affirmative defense, then it
does nothing more than join the issue raised by this motion. It is of no more effect than a "mere
pro forma denial."  Instead, however, what AVEC appears to arguing that a contract was created
by events other the exchange of these three written documents pursuant to the bid process--that
there was another offer, acceptance, or meeting of the minds.  Indeed, AVEC's contentions that
"the totality of circumstances" or additional considerations will somehow prove a contract are

tantamount to a concession that the bid process documents at issue here do not do so. Nevertheless, that claim is not inconsistent with the present motion, nor would it raise a material issue of fact. While AVEC is free to pursue claims in this litigation that a contract was separately formed, that does not create a material issue of fact here.

**C.     Equitable Defenses Do Not Create A Legal Right Or Defeat Judgment Here**

**1.     The existence of a contract must be decided before equitable claims of waiver and estoppel.**

AVEC's equitable defenses of waiver and estoppel are in the first instance irrelevant to the legal question of contract formation presented here. Indeed, they represent a fundamental misapprehension of the role of law and equity. An equitable defense, by its very nature, cannot establish whether a legal obligation, such as a contract, exists. That is a question of law. Instead, equitable remedies are reached only after a determination of legal rights and remedies. *See* 27A Am.Jur.2d *Equity* §§ 29 ("the test of equity jurisdiction is the absence of a legal remedy … the availability of an adequate legal remedy is a threshold determination"), 30, 36 ("a failure to exhaust available legal remedies, while pursuing an indirect equitable claim, is considered to render equitable jurisdiction both premature and improper").

Far from interfering with the grant of judgment on the pleadings as a matter of law, AVEC's equitable arguments require that whether or not a contract existed be determined first. *Id.* For example, AVEC's allegation that Crowley should be estopped to deny that a contract existed between the parties begs the question of <u>what</u> otherwise enforceable contract is being denied. AVEC's equitable estoppel arguments in theory could implicate many different possible factual claims concerning the parties' business relations, but they are only consistent with the terms of a specific written contract if such a contract ever existed in the first place. In short, the issue of whether a contract was formed by the parties' initial documents must still be decided even on AVEC's equitable theories.

**2.     Equitable defenses cannot create a contract.**

AVEC has argued that Crowley should be equitably estopped from taking a position in litigation. [Opposition Memo at 12-13, 20-21.] The effect of this argument would be to force Crowley to perform the contract as if it were validly accepted. But equitable estoppel may only be used defensively, not affirmatively to establish the existence of an obligation. *Simpson v.*

*Murkowski*, 129 P.3d 435, 449 n.18 (Alaska 2006). The only estoppel doctrine which could give rise to such affirmative relief is promissory estoppel, which *can* be used offensively to support an affirmative claim for relief and to enforce a promise. *Id.* For example, when used in conjunction with a contract claim, "the 'actual promise' element of promissory estoppel is analytically identical to the acceptance [or offer] required for a contract." *Valdez Fisheries, supra*, at 668, quoted in *Simpson* at n.48.[13] These estoppel doctrines are not interchangeable – when what is sought is enforcement of an alleged promise, promissory estoppel must be employed. *Id.*

AVEC is in fact attempting to claim the affirmative relief available only from a counterclaim of promissory estoppel in the guise of an affirmative defense of equitable estoppel. Thus the estoppel case relied upon by AVEC, *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274 (Alaska 1985), is the classic Alaska <u>promissory</u> estoppel case. *See Simpson*, 129 P.3d at 449 n.18 (referring to the test set forth in *Zeman* as the appropriate promissory estoppel analysis). This is erroneous as a matter of law.[14]

Nor can waiver create a contract. One cannot waive a contract into existence, because a contract requires a meeting of the minds evidenced by an offer and acceptance. *Davis*, 938 P.2d at 1006. With a few exceptions, none of which apply here, silence cannot operate to create a contract. *See* Restatement, § 69 at 164-65. Thus, AVEC's argument that Crowley failed to protest AVEC's late acceptance is unavailing – even if it operated as a waiver, that conduct could not create a contract. In short, "equity does not make contracts for parties, it enforces contracts which parties make for themselves." 27A Am.Jur.2d *Equity* § 64 (1996).

---

[13] For example, the equitable remedy of specific performance is generally only available if there is a valid and enforceable contract. There is an exception to this general rule in some real estate sales contracts, like the one at issue in *Beirne*, in which "equity may grant specific performance under the part performance doctrine." Calamari and Perillo on Contracts, 5th ed. § 16.8 *Validity, Enforceability, and Definiteness of the Contract* (2003). "Promissory estoppel also can be invoked to compel specific performance of an otherwise unenforceable contract." *Id.* This is not a real estate sale, and promissory estoppel has not been pled. *See* discussion, *infra* n.14 and accompanying text.

[14] It should be noted that a promissory estoppel claim would simply fail as a matter of law on the facts alleged. Just as AVEC has not alleged an "unequivocal acceptance," it has not alleged any specific enforceable promise, nor that it undertook a reasonably foreseeable change of position based on an actual promise. *See id.* at 440. In fact, AVEC would have to prove that Crowley had issued a new offer or acceptance in order to prove promissory estoppel. *See id.* at 449 n.48.

AVEC has deliberately pled its affirmative claims as defenses in order to avoid the burden of proof it would otherwise carry.  Merely calling its claims defenses, however, cannot escape the critical point that equitable defenses cannot create a contract.

**D.    No Fact Issues Are Presented Here In Any Event**

AVEC points to two documents from Jim Dwight of Crowley as "proof" that the "parties had a contract."  Amended Answer at 25 ¶1(a) and (b).  The first document is an e-mail communication dated March 3, 2004.[15]  In that communication Jim Dwight stated: "I … look forward to working with you and your associates as we complete AVEC supply and delivery requirements."  Mr. Dwight further stated that, "[a] summary of bookings will be provided for AVEC's review to fine tune delivery requirements (timing and quantity)."  While AVEC attempts to make this language into an indication that Crowley believed it had a contract with AVEC, in reality, Crowley's response to AVEC was in part an understanding that AVEC had agreed to continue discussions over certain items that remained unresolved.

Crowley and AVEC had an existing business relationship prior to the issuance of the 2004 Invitation To Bid.  Consistent with that relationship and AVEC's offer to negotiate the final terms of the 2004 Bid Award, Crowley began preparations to serve AVEC in 2004.  Those preparations continued, but could not be completed until AVEC and Crowley "reviewed," as AVEC suggested, the parties' "expectations, concerns and conditions."  Thus, in its second e-mail, dated March 30, 2004, Crowley requested that AVEC complete its review.[16]  Jim Dwight hinted that the information needed to be promptly delivered because, "[i]f we had this info (AVEC purchase order numbers, desired delivery dates and contact information), we could produce a Booking Report and Delivery schedule for your review and approval."  Still, AVEC failed to complete the promised review, and negotiated no further with Crowley.[17]

---

[15] This e-mail is attached as Exhibit A to AVEC's Amended Answer.

[16] This e-mail is attached as Exhibit B to AVEC's Amended Answer.

[17]  It was incumbent on AVEC to do what it said it would do, and not on Crowley to demand that it be done.  When a party sends a proposed agreement that has as a condition precedent the creation of another document, the submitting party must create the second document or stand in breach.  *See Anchorage Chrysler Center, Inc. v. DaimlerChrysler Corporation*, 129 P.3d 905, 917 (Alaska 2006).  The receiving party has no obligation to demand that the second document be produced.  *Id.*  AVEC had the responsibility to complete the "review" between the parties which would be "finalized in writing."  To the degree AVEC's failure to do so is evidence of

Later, however, AVEC sent purchase orders to Crowley. Crowley responded by delivering fuel in accordance with those purchase orders, and by invoicing at a reasonable market price. It would have been poor customer management, if nothing else, to behave in any other way.

AVEC also points to wording on its purchase orders and on Crowley's invoices as proof that a contract was formed. But an acknowledgment on an invoice of language in a purchase order cannot possibly be proof that an offer was validly accepted months earlier. As argued above, whatever AVEC alleges about Crowley's later words and conduct, those allegations are irrelevant to the determination of whether the February 20 letter was a valid acceptance of Crowley's offer.

Crowley has never disputed that it was acting in conformance with *some* commercial relationship between the parties. Crowley simply recognizes, and asks the Court to declare, that the particular relationship was not the one embodied in the ITB, bid proposal, and February 20 letter. In short, Crowley made AVEC an offer in its bid response, AVEC did not accept that offer. Plainly, no arrangement was ever reached between the parties on the terms Crowley offered. Whatever relationship existed between Crowley and AVEC, it was not the one AVEC would have the Court believe exists.[18]

No new facts or issues are raised by AVEC's Amended Answer. AVEC, the party with the burden of proof on this issue, still has not established that a contract was formed based on the bid documents. In fact, no such contract was formed and Crowley is entitled to judgment to that effect.

---

anything, it is evidence of AVEC's breach of the obligation to negotiate in good faith with Crowley. It is certainly not proof of any contract between the parties.

[18] Nor is the existence of Crowley's Certificate of Insurance proof that a contract exists between the parties. The February 20th letter clearly indicated that AVEC wanted to finalize an arrangement with Crowley. Certificates of Insurance were required by AVEC's Request for Proposals. *See* Exhibit A to Crowley's Complaint at 9. This was simply another item in the negotiations AVEC had opened.

## CONCLUSION

It is clear as a matter of law that these three documents did not create a contract. The Court can and should now decide that the legal effect of these documents was null. Crowley's Motion for Partial Judgment on the Pleadings can and should be granted.

DATED at Anchorage, Alaska this 23rd day of June 2006.

s/ Douglas J. Serdahely
PATTON BOGGS LLP
ABA No. 7210072
601 W. 5th Avenue, Suite 700
Anchorage, Alaska 99501
Tel: (907) 263-6310
Fax: (907) 263-6345
E-mail: dserdahely@pattonboggs.com

Attorneys for Plaintiff Crowley Marine
Services, Inc.

### CERTIFICATE OF SERVICE

I hereby certify that on June 23rd, 2006, a copy of the foregoing document was served electronically on:

**John A. Leman, Esq.**          **Jason M. Gist**
jal@khe.com                      jmg@khe.com

**Paul J. Jones, Esq.**
pjj@khe.com

By:     s/Maribel Webber
        Legal Secretary/Assistant
        PATTON BOGGS LLP