Douglas J. Serdahely, Esq. (Alaska Bar No. 7210072)
dserdahely@pattonboggs.com
PATTON BOGGS LLP
601 W. Fifth Avenue, Suite 700
Anchorage, Alaska 99501
Telephone:  (907) 263-6310
Fax:  (907) 263-6345

*Attorneys for Plaintiff Crowley Marine Services, Inc.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CROWLEY MARINE SERVICES, INC., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ALASKA VILLAGE ELECTRIC )<br>COOPERATIVE, INC., )<br>)<br>Defendant. )<br>_____ ) | Case No. 3:06-cv-00054-TMB |

## FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, DAMAGES AND/OR EQUITABLE RELIEF

Plaintiff Crowley Marine Services, Inc. ("Crowley"), by and through its attorneys, Patton Boggs LLP, alleges and requests relief as follows:

### Jurisdiction and Venue

1.      This is an action for declaratory judgment under the declaratory judgment laws of the United States, 28 U.S.C. § 2201 *et seq.*, and for money damages and/or equitable relief. Original subject matter jurisdiction over this matter is conferred upon the Court pursuant to 28 U.S.C. § 1332, as this civil action is between citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

023659.0101\52308

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Crowley does business in this judicial district, Defendant Alaska Village Electric Cooperative, Inc. ("AVEC") resides in this judicial district, and a substantial number of events or omissions giving rise to Crowley's claims occurred in this judicial district.

### The Parties

3.      Crowley is a corporation organized under the laws of the State of Delaware and has its principal place of business in Seattle, Washington.

4.      Crowley is authorized to transact business in the State of Alaska, has paid its biennial corporation taxes last due, has filed its biennial report for the last reporting period, and has satisfied all other conditions precedent to bringing and maintaining this action.

5.      AVEC is a corporation organized under the laws of the State of Alaska and has its principal place of business in Anchorage, Alaska.

### Factual Allegations

6.      Crowley is a diverse worldwide marine transportation and logistics services company.  One of Crowley's primary business activities within Alaska is the sale and transportation of bulk petroleum products.  Crowley sells and delivers heating fuel, diesel fuel, unleaded gasoline and jet fuel, in addition to an array of other petroleum products, to a multitude of Alaska communities.

7.      AVEC is a non-profit electric utility serving residents in 51 locations throughout rural Alaska.  All except one AVEC location is accessible only by airplane or marine vessel.  AVEC owns the power plants found in its member communities and contracts for the fuel to run those plants.

8.      On November 13, 2003, AVEC issued an Invitation to Bid ("ITB") titled "2004 Fuel Bid – PUR-F-001/01." *See* Exhibit A.

9.      The ITB contained specific fuel quantity requirements for AVEC, the Lower Yukon School District, the Lower Kuskokwim School District, the Northwest Arctic Borough School District, the Saint Mary's School District, and the Kashunamiut School District.

10.     The ITB required responses by December 1, 2003.

11.     The ITB stated that bid opening would be December 1, 2003.

12.     The ITB stated that bid evaluation and formal notice of award would be completed within 10 days after bid opening.

13.     All responses to the ITB were to be firm for 45 days from the date of bid opening.

14.     Crowley timely responded to the ITB on December 1, 2003 ("Crowley's Offer"). *See* Exhibit B.

15.     Crowley's Offer contained both Indexed Prices with a Price Cap and Fixed Prices.

16.     Crowley's Offer for Indexed Prices was valid until close of business on January 15, 2004.

17.     Crowley's Offer for Fixed Prices was valid until close of business on December 4, 2003.

18.     Beginning in early 2004, the market price of fuel increased significantly and the fuel market became very volatile.

19.     AVEC issued a "Notice of Award" dated February 20, 2004 (the "February 20 Letter"). *See* Exhibit C.

20.     The February 20 Letter stated that certain business under the ITB was awarded to

Crowley and other business to another bidder, Yukon Fuel Company ("Yukon").

21.     The February 20 Letter stated:

> To complete this award process a review of expectations, concerns
> and any conditions that may affect delivery schedules or the
> pricing structure will be finalized in writing over the next few
> weeks, and completed no later than March 12th.

22.     No review was ever conducted nor was any agreement ever finalized in writing

"to complete this award process", either prior to March 12th or at any time thereafter, as

specified by the February 20 Letter.

23.     On or about May 13, 2004, Crowley received the first AVEC Purchase Orders for

the 2004 season.

24.     In mid May 2004, Crowley commenced deliveries to AVEC participants.

25.     On May 15, 2004, Crowley invoiced AVEC for the first round of 2004 deliveries.

The invoice prices were set at market price as determined by Seattle OPIS, [1] the same Indexed

Price bid by Crowley but without Price Caps.

26.     In late June, 2004, Crowley received its first payments from AVEC.  AVEC

short-paid Crowley's invoices, paying only up to the Price Cap contained in Crowley's Offer.

27.     On July 9, 2004, Crowley sent a letter to AVEC protesting AVEC's short

payment of invoices.  *See* Exhibit D.

28.     Crowley continued to deliver to AVEC participants in 2004 reserving its right to

recover payment from AVEC.

---

[1]  The publication, <u>Oil Price Information Service</u> ("OPIS"), is an industry-recognized listing for
oil and fuel prices at various locations, including Seattle.

29.     Crowley completed its deliveries to AVEC participants for the 2004 season.

30.     For all invoices sent by Crowley for 2004 deliveries, AVEC paid only the price of fuel up to the Price Cap shown on Crowley's Offer.

31.     As of November 2004, the difference between the price invoiced by Crowley and the price actually paid by AVEC was approximately $224,330.42 for 2004 deliveries.

32.     On or about April 14, 2005, Crowley received AVEC Purchase Orders for the 2005 season.

33.     Crowley delivered fuel to the AVEC participants for the 2005 season under a reservation of rights.  *See* Exhibit E.

34.     During 2005, Crowley continued to invoice AVEC at market price.

35.     During 2005, AVEC failed to pay Crowley's invoiced amounts.

36.     As of December, 2005, the difference between the price invoiced by Crowley and the price actually paid by AVEC was approximately $1,322,269.89 for 2005 deliveries.

37.     On or about April 27, 2006, Crowley received AVEC Purchase Orders for the 2006 season.

38.     Crowley delivered fuel to the AVEC participants for the 2006 season under a reservation of rights.  *See* Exhibit F.

39.   During 2006, Crowley continued to invoice AVEC at market price.

40.   During 2006, AVEC failed to pay Crowley's invoiced amounts.

41.   As of December, 2006, the difference between the price invoiced by Crowley and the price actually paid by AVEC was approximately $3,920,095.52 for 2006 deliveries.

**Count I**
**Claim For Declaratory Relief**
**[*28 USC §2201 et seq.* ]**

42.     Crowley hereby realleges and incorporates by reference all of the allegations

contained in paragraphs 1 through 41 as though fully set forth herein.

43.     There is an existing controversy between the parties, as detailed herein.

44.     On November 13, 2003, AVEC issued the ITB.  The ITB contained twenty-three

pages of bid specifications, including "Area Sheets" citing specific fuel requirements to be met

in any responsive bid.  Prospective bidders were instructed to use the forms provided.  Exhibit A

at 4, "Instructions to Bidders," ¶ 3.  The ITB stated that bids would be accepted until December

1, 2003.  Exhibit A at 1.

45.     The bid specifications stated: "For purpose of award, offers made in accordance

with this Invitation to Bid shall be good and firm for a period of forty-five (45) days from the

date of bid opening, unless the bidder specifically limits their offer to a shorter period by written

notification on the bid documents.  However, bids so modified may be declared non-

responsive."  Exhibit A at 5, ¶ 4.

46.     On December 1, 2001, Crowley timely responded to the ITB.  Exhibit B.

Crowley's Offer contained Indexed Prices for all areas solicited, and in addition and in the

alternative, an offer for Fixed Prices.  Exhibit B at 14-26 and 27-39.

47.     The bid cover sheet expressly stated: "Crowley's offer of Indexed Prices is valid

until close of business January 15, 2004."  Exhibit B at 1, ¶ 4(A).

48.     Crowley's Offer expressly stated, "The offer of Fixed Prices is valid until close of

business December 4, 2003, and is subject to Crowley's confirmation at the time of receiving the

new prospective award notice."  *Id* at ¶ 4(B).

49.     By the express terms of the ITB, Crowley's Offer expired forty-five (45) days after its receipt on December 1, 2003.  Exhibit A at 5, "Conditions," ¶ 4.

50.     By the express terms of Crowley's Offer, the proposal for Indexed Prices expired on January 15, 2004.  Exhibit B at 1.

51.     By the express terms of Crowley's Offer, the proposal for Fixed Prices expired on December 4, 2003.  Exhibit B at 1.

52.     On February 24, 2004, AVEC issued the February 20 Letter stating "area contract awards are made" in four areas to Crowley set forth in the bid specifications.  Two areas were awarded to Yukon Fuel Company.  Exhibit C.

53.     AVEC's February 20 Letter was untimely, ineffective, and invalid as a purported acceptance of Crowley's Offer, because the Offer expressly expired on January 15, 2004.

54.     The February 20 Letter was untimely, ineffective and invalid as a purported acceptance of Crowley's Offer because it violated the express terms of AVEC's own bid specifications, which required that Crowley's Offer only remain "good and firm for a period of forty-five (45) days from the date of bid opening" on December 1, 2003.

55.     The February 20 Letter was untimely, ineffective and invalid as a purported acceptance of Crowley's Offer because it violated the express terms of the ITB, which stated "Bid evaluations and formal notice of award will be completed within ten working days after bid opening...."

56.     The February 20 Letter was invalid and ineffective as a purported acceptance of Crowley's Offer because, by its own express terms, the February 20 Letter stated that the bid award process could not be completed until a further agreement was "finalized in writing" based,

in part, upon a "review of ... any condition that may affect ... the pricing structure" and no such review or finalizing was ever done.

57.     As a matter of law, no valid contract or binding obligation between Crowley and AVEC was or could have been formed by the February 20 Letter.

58.     Crowley is entitled to a judicial declaration that no valid contract or binding obligation between Crowley and AVEC was formed, or is currently in effect, pursuant to the ITB, Crowley's Offer and the February 20 Letter.

### Count II
### Misrepresentation

59.     Crowley hereby realleges and incorporates by reference all of the allegations contained in paragraphs 1 through 58 as though fully set forth herein.

**A.     Misrepresentations As to Price Caps**

60.     The Bid Specifications contained thirteen "Area Sheets" designating site specific fuel requirements and delivery dates for each area.  Each Area Sheet contained three boxes with multiple entry lines left blank in order to be filled in by a bidder.  The three boxes on each Area Sheet with accompanying entry lines were headed, respectively, **"Bid Price Per Gallon,"** **"Extended Bid Price,"** and **"Price Cap Per Gallon."**  Exhibit A at 15-27.

61.     The Bid Specifications stated "Bidders are instructed to use this and attached forms in submitting bids.  A clear photocopy bid may be submitted, but it must contain all bids shown in the original bid and have <u>original signatures</u>."  Exhibit A at 4, "Instructions to Bidders," ¶ 3 (emphasis in original).

62.     The Bid Specifications further provided,  in a section entitled **"CONDITIONS,"** as follows:

"Any offer and acceptance resulting from this Invitation to Bid shall be expressly limited to the terms and conditions as shown on this form and its attachments….

**A bid may be rejected when . . .**

b.    The bid forms or Area Sheets are not <u>signed and notarized</u>....

d.    The bidder has failed to use this bid form.

<u>A bid shall be rejected when the bidder makes a material change in the specification or terms or conditions of the Invitation to Bid.</u>"

Exhibit A at 4-5 (emphasis in original).

63.    The Bid Specifications further provided, in a section entitled **"FIXED PRICE OR PRICE CAP,"** as follows:

<u>All bids are to contain a two tiered pricing structure</u>.  The indexed formula will be tied to the Seattle OPIS as stated above.  The firm fixed price or price cap shall be added to the Area Sheets in the space provided…

Exhibit A at 7 (emphasis in original).

64.    All of the Area Sheets/bid forms provided in the Bid Specifications contained boxes with entry lines requiring a bidder to fill in "Price Caps."  Exhibit A at 15-27.

65.    None of the Area Sheets/bid forms provided in the Bid Specifications contained a box, entry line, or other requirement to address firm fixed prices.  *Id.*

66.    Pursuant in part to the factual allegations set forth above, AVEC represented that Price Caps were a required element of a bid for any Area Sheet.

67.    Pursuant in part to the factual allegations set forth above, AVEC represented that any bid without Price Caps would be rejected as non-responsive, among other reasons, either because "the bidder has failed to use this bid form" or because "a bid shall be rejected when the

bidder makes a material change in the specification or terms or conditions of the Invitation to Bid" as set forth in the **"CONDITIONS"** of the Bid Specifications.

68.     Subsequently Crowley learned that AVEC's representation that Price Caps were a required element of a bid was false.

69.     Specifically, Crowley learned that Yukon submitted bid offers without Price Caps.

70.     Crowley also later learned that Yukon's bid offers without Price Caps were not rejected as non-responsive.

71.     Crowley further learned that, instead, they were accepted with respect to two areas within the scope of the ITB.

72.     AVEC negligently or otherwise represented that Price Caps were a required element of bid offers.

73.     Such representations were false.

74.     Such representations were material to the formulation of Crowley's Offer.

75.     AVEC had a duty to accurately represent to Crowley the required elements of its bid.

76.     AVEC had a duty to timely advise Crowley that Price Caps were not required under the contract, but AVEC negligently or otherwise failed to advise Crowley of that material fact.

77.     AVEC's misrepresentations that Price Caps were required on any bid offer induced and caused Crowley to submit a bid offer containing Price Caps and to enter into any contract or binding obligation alleged to arise from the ITB.

78.     Crowley justifiably relied upon AVEC's misrepresentation that Price Caps were required for all bid offers, and Crowley's Offer contained such Price Caps.

79.     If, and only to the degree that any valid contract or binding obligation arose from the ITB, which Crowley denies, AVEC's misrepresentation about the mandatory nature of Price Caps was material, induced Crowley to submit its offer, and induced Crowley to enter into any such contract or binding obligation.

80.     Crowley has been damaged by AVEC's misrepresentations in an amount to be proven at trial.

81.     In consequence of AVEC's misrepresentations about the mandatory nature of Price Caps, any contract or binding obligation between Crowley and AVEC now claimed to arise from the bid process or Crowley's Offer is void.

**B.     Misrepresentations as to Quantity Requirements**

82.     In the ITB, AVEC represented that the scope of the bid was to comprise "annual fuel requirements…of AVEC, Lower Yukon School District, Lower Kuskokwim School District, Northwest Arctic School District, Saint Mary's School District, and the Kashunamiut School District."  Exhibit A at 1.

83.     AVEC's Bid Specifications further represented that the scope of bid was to comprise the fuel quantities for all the areas set forth therein.  Exhibit A at 15-27.

84.     Subsequently, and after AVEC's purported "Notice of Award" on February 20, 2004, Crowley learned that the scope of AVEC's fuel requirements for its bid solicitation did not include the Lower Kuskokwim and Lower Yukon School Districts.

85.     Instead, and on the contrary, those Districts already had existing contracts with Yukon.

86.     AVEC's representations that the scope of the annual fuel requirements included the Lower Kuskokwim and Lower Yukon School Districts were false.

87.     AVEC's representations that the scope of the annual fuel requirements included the Lower Kuskokwim and Lower Yukon School Districts were material.

88.     The scope of the annual fuel requirements in fact subject to any bid were more than one million gallons per year less than set forth by the ITB, approximately 20% of the total quantity set forth therein.

89.     AVEC had a duty to accurately represent to Crowley the required elements of its bid.

90.     AVEC had a duty to advise Crowley of the true quantity requirements in the ITB, but AVEC negligently or otherwise failed to advise Crowley of that material fact.

91.     Crowley justifiably relied upon AVEC's misrepresentations that the scope of the annual fuel requirements included the Lower Kuskokwim and Lower Yukon School Districts.

92.     If, and only to the degree that any contract or binding obligation arose from the ITB, which Crowley denies, AVEC's misrepresentation that the annual fuel requirements shown in the ITB included the Lower Kuskokwim and Lower Yukon School Districts were material, induced Crowley to submit its Offer and induced Crowley to enter into any such contract or binding obligation.

93.     Crowley has been damaged by AVEC's misrepresentations in an amount to be proven at trial.

94.     In consequence of AVEC's misrepresentations about the scope of the fuel requirements in the ITB, any contract or binding obligation between Crowley and AVEC now claimed to arise from the bid process or Crowley's Offer is void.

**C.      Misrepresentations as to Completion of the Award Process and/or Any Agreement**

95.     In the February 20 Letter, AVEC stated: "To complete this award process, a review of expectations, concerns, and any condition that may affect delivery schedules or the pricing structure will be finalized in writing over the next few weeks and completed no later than March 12."

96.     No such review was ever conducted.

97.     No further agreement was "finalized in writing" in order "[t]o complete this award process."

98.     AVEC's representations that it would "review . . . expectations, concerns, and any condition that may affect delivery or the pricing . . ." and would finalize that review "in writing . . . no later than March 12," were false.

99.     AVEC's representations that it would "review . . . expectations, concerns, and any condition that may affect delivery or the pricing . . ." and would finalize that review "in writing . . . no later than March 12," were material.

100.     AVEC had a duty to accurately advise Crowley of the requirements and conditions for completion of the award process and/or any agreement between the parties.

101.     Crowley justifiably relied upon AVEC's misrepresentation in the February 20 Letter that "To complete this award process, a review of expectations, concerns, and any condition that may affect delivery schedules or the pricing structure will be finalized in writing over the next few weeks and completed no later than March 12."

102.     If, and only to the degree that a valid contract or binding obligation arose from the February 20 Letter, which Crowley denies, Crowley's entry into any such contract or obligation was induced by AVEC's material misrepresentation that there would be further

review, *inter alia*, of "any condition that may affect ... the pricing structure" and that a further subsequent agreement had to be "finalized in writing" in order "to complete this award process."

103.    Crowley has been damaged by AVEC's misrepresentations in an amount to be proven at trial.

104.    As a result of AVEC's misrepresentations in the February 20 Letter, any valid contract or binding obligation between Crowley and AVEC now claimed to arise in whole or in part from the February 20 Letter is void.

### Count III
### Estoppel

105.    Crowley hereby realleges and incorporates by reference all of the allegations contained in paragraphs 1 through 104 as though fully set forth herein.

106.    AVEC represented to Crowley that any offer in response to the ITB would only be "good and firm" for a period of forty-five (45) days.  Exhibit A at 5.

107.    Crowley reasonably relied upon this representation.

108.    Crowley would be unfairly prejudiced if AVEC were now to claim that its untimely response to Crowley's Offer was valid or effective.

109.    Justice requires that AVEC be estopped from so claiming.

110.    As a result of AVEC's representation that any offer in response to the ITB would only be "good and firm" for a period of forty-five (45) days, AVEC is estopped to now claim that its untimely response to Crowley's Offer was valid or effective, or created a valid contract or binding obligation.

111.    AVEC represented to Crowley in the ITB that "Bid evaluation and formal notice of award will be completed within ten working days after bid opening, unless a longer period is established due to special considerations such as selective bidding."  Exhibit A at 1.

112.    Crowley reasonably relied upon this representation.

113.    Crowley would be unfairly prejudiced if AVEC were now to claim that its untimely response to Crowley's Offer was valid or effective.

114.    Justice requires that AVEC be estopped from so claiming.

115.    As a result of AVEC's representation in the ITB that "Bid evaluation and formal notice of award will be completed within ten working days after bid opening, unless a longer period is established due to special considerations such as selectively bidding," AVEC is estopped to now claim that its untimely response to Crowley's Offer was valid or effective, or created a valid contract or binding obligation.

116.    AVEC represented to Crowley in the February 20 Letter that "to complete this award process, a review of expectations, concerns and any condition that may affect delivery schedules or the pricing structure will be finalized in writing over the next few weeks, and completed no later than March 12."  Exhibit C.

117.    Crowley reasonably relied upon this representation.

118.    Crowley would be unfairly prejudiced if AVEC were now to claim that its untimely response to Crowley's Offer was valid or effective.

119.    Justice requires that AVEC be estopped from so claiming.

120.    As a result of AVEC's representation in the February 20 Letter that "to complete this award process, a review of expectations, concerns and any condition that may affect delivery schedules or the pricing structure will be finalized in writing over the next few weeks,

and completed no later than March 12," AVEC is estopped to now claim that such Letter was valid or effective as an acceptance of Crowley's Offer, or created any valid contract or binding obligation.

**Count IV**
**Action on the Price, AS 45.02.709**

121.    Crowley hereby realleges and incorporates by reference all of the allegations contained in paragraphs 1 through 120 as though fully set forth herein.

122.    AVEC submitted to Crowley a series of requests for the sale and delivery of fuel in 2004, 2005 and 2006.

123.    Crowley delivered fuel in response to AVEC's requests.

124.    Crowley stated, through invoices and other documents, that the purchase price for the delivery to AVEC was the then-current market price as reflected in the invoices to AVEC.

125.    AVEC accepted each delivery of fuel made in accordance with AVEC's requests and all fuel delivered conformed to AVEC's requests.

126.    AVEC has failed to pay the price of the fuel when it came due.

127.    Crowley is entitled to a judgment in the amount of the price of the fuel delivered and to be delivered and such incidental damages as AVEC's failure to pay have occasioned, less any payments AVEC has made.

**Count V**
**Claim for Recovery for Unjust Enrichment and/or Quantum Meruit**

128.    Crowley hereby realleges and incorporates by reference all of the allegations contained in paragraphs 1 through 127 as though fully set forth herein.

129.    Based on AVEC's offers to buy, Crowley delivered substantial quantities of fuel to AVEC in 2004, 2005 and 2006.

130.    Crowley expected that it would be paid a commercially reasonable price for these deliveries.

131.    AVEC appreciated the value of these deliveries, and of the fuel delivered.

132.    AVEC was aware that Crowley expected that it would be paid a commercially reasonable price for the deliveries and fuel.

133.    AVEC retained the fuel and the value of the delivery services but did not pay the commercially reasonable price of such fuel and deliveries.

134.    It was unjust for AVEC to retain the fuel and value of the delivery services provided by Crowley and not pay a commercially reasonable price for such fuel and services.

135.    Crowley is entitled to a judgment for the value of the benefit provided to AVEC, consisting of the difference between the commercially reasonable value of fuel and delivery services provided by Crowley and the amounts AVEC actually paid for such fuel and services.

**Count VI**
**Alternative Claim for Breach of Duty of Good Faith and Fair Dealing**

136.    Crowley hereby realleges and incorporates by reference all of the allegations contained in paragraphs 1 through 135 as though fully set forth herein.

137.    In 2004, as fuel prices continued to climb, it became apparent that any capped or fixed prices offered in 2003 had become obsolete and commercially unreasonable.

138.    AVEC's conduct in paying as if the deliveries of fuel were subject to Price Caps despite the commercial impracticability of any Price Caps, and despite having been informed that no enforceable contract containing Price Caps existed between the parties, was unfair and unreasonable, in violation of AVEC's duty of good faith and fair dealing.

139.    In the ITB, AVEC indicated that bids would be considered nonresponsive if they did not contain Price Caps on Indexed Price quotes.

140.    At least one bidder, Yukon, submitted a bid that was considered to be responsive despite the fact that it did not contain Price Caps on Indexed Price quotes.

141.    AVEC awarded a supply contract to Yukon despite Yukon's failure to include Price Caps, and has not enforced any Price Caps against Yukon or short-paid any invoices from Yukon.

142.    AVEC has attempted to enforce a Price Cap against Crowley, and has short-paid Crowley's invoices.

143.    This disparate treatment in enforcing a Price Cap against Crowley while not enforcing a Price Cap against Yukon is unfair and unreasonable and violates AVEC's duty of good faith and fair dealing.

144.    AVEC has violated the implied covenant of good faith and fair dealing arising at common law and under AS 45.01.2030

145.    Crowley has been damaged by AVEC's breach of the duty of good faith and fair dealing in an amount to be proven at trial.

146.    Crowley is entitled to a judgment for the damages it has sustained by nature of this breach.

## Count VII
## <u>Alternative Claim for Breach of Contract</u>

147.    Crowley hereby realleges and incorporates by reference all of the allegations contained in paragraphs 1 through 146 as though fully set forth herein.

148.    In the February 20 Letter, AVEC promised that "a review of expectations, concerns and any conditions that may affect delivery schedules or the pricing structure will be finalized in writing over the next few weeks, and completed no later than March 12th." Exhibit C.

149.    If, and only to the degree that, this Letter constituted a valid acceptance of Crowley's Offer and created an enforceable contract, which Crowley denies, that promise to review, finalize and memorialize was binding.

150.    AVEC did not contact Crowley to conduct " a review of expectations, concerns and any conditions that might affect delivery schedules or  . . . pricing" prior to March 12, 2004.

151.    AVEC did not contact Crowley "[t]o complete this award process" in such a manner as to be "finalized in writing" prior to March 12, 2004.

152.    If, and only to the degree that there was a contract created by Crowley's Offer and the February 20 Letter, which Crowley denies, AVEC breached that contract by failing to give Crowley an opportunity to participate in reviewing, finalizing and/or memorializing the "agreement" between the parties.

153.    If, and only to the degree that there was a contract created by Crowley's Offer and the February 20 Letter that purportedly accepted Crowley's Offer, which Crowley denies, Crowley is entitled to an award of damages, including the difference between the amounts AVEC has actually paid or may in the future pay and the amounts that would have been paid if

AVEC had provided Crowley the opportunity between February 20 and March 12, 2004, to

negotiate the price structure of the contract.

## Count VIII
### Alternate Claim for Equitable Rescission or Reformation

154.    Crowley hereby realleges and incorporates by reference all of the allegations

contained in paragraphs 1 through 153 as though fully set forth herein.

### A.    Impracticability

155.    It was a basic assumption of the bid proposal that the market price of fuel would

not increase by so much as to make delivery under the contract impracticable to Crowley.

156.    Changes in the market price of fuel to be delivered under Crowley's proposal

were and are outside of Crowley's control.

157.    During the period of deliveries in 2004, 2005 and 2006 , the prices of fuel have

increased until delivery under the bid proposal could not be accomplished practicably by

Crowley.

158.    These increases in price were not foreseeable.

159.    These increases in price were well beyond the normal range of price fluctuations

for fuel.

160.    If, and only to the degree that there was a contract created by Crowley's Offer

and the February 20 Letter, which Crowley denies, Crowley is entitled to relief from any such

obligation created by the commercially impracticable terms of its Offer.  Such relief should

include reformation of the price term to be Indexed Prices, deleting any Price Caps, or rescission

of the contract.

**B.      Rescission or Reformation Due to Mutual Mistakes**

161.     If, and only to the degree that there was a contract created by Crowley's Offer and the February 20 Letter, which Crowley denies, then both parties believed at the time of contracting that any fluctuations in the price of fuel over the contract period would be within the normal range.

162.     There were price fluctuations that were not within the normal range.

163.     The range and degree of price fluctuations was a basic assumption of any contract.

164.     The range and degree of price fluctuations materially affects the agreed exchange contemplated by any contract.

165.     Neither party expressly assumed the risk of price fluctuations beyond the normal range.

166.     If, and only to the degree that there was a contract created by Crowley's Offer and the February 20 Letter, which Crowley denies, then both parties believed at the time of contracting that the Lower Kuskokwim and Lower Yukon School Districts would purchase fuel under the contract.

167.     The Lower Kuskokwim and Lower Yukon School Districts already had fuel supply contracts for 2004 with another vendor, and did not purchase fuel from Crowley in 2004.

168.     The assumption that the volume of fuel sales attributable to the Lower Kuskokwim and Lower Yukon School Districts, representing about 20% of the total volume of fuel to be sold in 2004, would be part of the ITB, was a basic assumption of any contract.

169.     The failure of the Lower Kuskokwim and Lower Yukon School Districts to purchase any fuel in 2004 effected the agreed exchange contemplated by the ITB.

170.     Crowley did not assume the risk that the Lower Kuskokwim and Lower Yukon School Districts would not purchase fuel as indicated by the ITB.

171.     If, and only to the degree that there was a contract created by Crowley's Offer and the February 20 Letter, which Crowley denies, Crowley is entitled to relief from any such obligation created by the mutual mistakes of the parties.  Such relief should include reformation of the price term to be Indexed Prices, deleting any Price Caps, or rescission of the contract.

**C.     Rescission Due to Prior Material Breach**

172.     If, and only to the degree that there was a contract created by Crowley's Offer and the February 20 Letter, which Crowley denies, then that contract included a promise from AVEC that the Lower Kuskokwim and Lower Yukon School Districts would purchase a substantial amount of fuel, estimated to be about 20% of the total volume to be purchased for each year of the contract.

173.     Neither the Lower Kuskokwim nor the Lower Yukon School District purchased any fuel from Crowley under the terms of Crowley's Offer and the February 20 Letter in 2004.

174.     If, and only to the degree that there was a contract formed by Crowley's Offer and the February 20 Letter, which Crowley denies, the anticipated purchase of fuel by the Lower Kuskokwim and Lower Yukon School Districts was material to any such contract.

175.     If, and only to the degree that there was a contract created by Crowley's Offer and the February 20 Letter, which Crowley denies, Crowley is entitled to relief from any such obligation created by this contract due to AVEC's prior breach of the contract.  Such relief should include rescission of the contract.

**Prayer For Relief**

WHEREFORE, Crowley prays for the following relief:

A.      Entry of an order declaring that no valid contract or valid obligation between Crowley and AVEC was formed or is currently in effect pursuant to the ITB, Crowley's Offer and the February 20 Letter.

B.      Money damages, plus interest as appropriate, for the difference between the price of delivered fuel as invoiced by Crowley and the amount actually paid, or to be paid, for such fuel by AVEC, in an amount to be determined at trial.

C.      Alternatively, money damages, plus interest as appropriate, for the difference between the commercially reasonable value of the fuel delivered and the amount actually paid or to be paid for such fuel by AVEC in an amount to be determined at trial.

D.      Alternatively, in the event the Court finds a valid contract was created by AVEC's bid solicitation process and currently is in effect between Crowley and AVEC, for an order rescinding such contract or reforming the price term therein to be Indexed Prices quoted by Crowley and deleting any Price Caps contained therein.

E.      For an award of costs and reasonable attorney's fees against AVEC.

F.      Such other and further relief as the Court may deem just and equitable.

DATED at Anchorage, Alaska this 29th day of December 2006.

s/ Douglas J. Serdahely
PATTON BOGGS LLP
ABA No. 7210072
601 W. 5th Avenue, Suite 700
Anchorage, Alaska 99501
Tel: (907) 263-6310
Fax: (907) 263-6345
E-mail: dserdahely@pattonboggs.com

*Attorneys for Plaintiff Crowley Marine*
*Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of December 2006, the foregoing
document was served via electronically on:

**John A. Leman, Esq.**          **Jason M. Gist**
jal@khe.com                      jmg@khe.com

**Paul J. Jones, Esq.**
pjj@khe.com

By:      s/Maribel Webber
         Legal Secretary/Assistant
         PATTON BOGGS LLP